## SMITH v. STONE ET AL.
### (No. 694.)

PLEADING—UNCERTAINTY—DEMURRER—FRAUD—SUFFICIENCY OF AL-
LEGATION—CORPORATIONS—STOCKHOLDERS, RIGHTS OF AS TO SALE OF
CORPORATE PROPERTY—ESTOPPEL—SUIT BY MINORITY STOCKHOLDER—
SALE OF ENTIRE ASSETS OF CORPORATION BY MAJORITY STOCKHOLD-
ERS—OBJECTION BY MINORITY STOCKHOLDER—PURCHASE OF CORPO-
RATE PROPERTY BY ANOTHER CORPORATION—SUIT BY STOCKHOLDER
TO VACATE SALE—ACCOUNTING—LACHES.

1. Where a petition is indefinite and uncertain, the defect is
   ordinarily to be corrected by motion to make more definite
   and certain by amendment, and is not ordinarily a ground
   for demurrer.

2. Respecting the sufficiency of a petition, there is a distinction
   in the rules of code pleading between an entire failure to
   state a cause of action and the statement of one in an
   imperfect and defective manner, but in an action by an
   objecting stockholder to set aside a sale of the assets of
   a corporation on the ground of fraud and misconduct on
   the part of the majority stockholders, where the defect of
   indefiniteness and uncertainty in the petition relates to ma-
   terial facts concerning which the averments ought to be
   reasonably definite and certain, it may amount to a failure
   to state a cause of action rendering the petition de-
   murrable.

3. A bill or petition founded upon fraud or misconduct should
   allege with certainty and definiteness tangible facts to sus-
   tain the general averments of such fraud and misconduct.

4. Where, in an action by a minority stockholder to set aside
   the sale of corporate assets pursuant to a resolution adopted
   at an annual meeting of the stockholders, it was contended
   as one ground for vacating the sale that the stockholders
   were without authority at such meeting to consider or
   adopt the resolution for the reason that the notice of the

meeting did not specify that such matter would be considered, *Held,* that, since the statute provided as to notice of the annual meeting only that notice of the time and place of holding the same should be published, and it was provided by statute that the stockholders, or the trustees, if the certificate of incorporation so provides, shall have power to make by-laws as they shall deem proper for the management and disposition of the stock and business affairs of the company, not inconsistent with the laws of the state, and the petition did not show what provision, if any, was made in the by-laws with reference to the business that might be transacted at the annual meeting and the notice to be given at such meeting, the notice complained of may have complied in all respects with the by-laws so as to authorize the adoption of the resolution, and, hence, in that particular, the petition was indefinite and uncertain.

5. Where a minority stockholder, who was present at the annual meeting of the stockholders at which a resolution was adopted to sell the corporate property, objected to the resolution on the sole ground that the price fixed thereby was not the reasonable, fair, and market value of the property, and that by endeavor a larger price could be procured, any objection to the form of the notice of the meeting was not available to him in an action afterwards brought to set aside the sale made pursuant to such resolution, and, therefore, it was unnecessary to consider or determine whether in all cases a notice of the annual meeting which did not state that the matter of selling the property would be considered would be sufficient to authorize such a resolution as that adopted.

6. In an action by a minority stockholder to set aside a sale of the corporate property on the ground of alleged fraud and misconduct on the part of certain majority stockholders, where the petition alleged that certain stockholders were present at the meeting authorizing the sale, and that others were not present, but did not allege whether the stock of those not present was or was not legally and properly represented and voted at such meeting, *Held,* that it could not be assumed that any of the stock was not represented and voted at the meeting.

7. A petition in an action by a minority stockholder to set aside the sale of corporate property pursuant to a resolution adopted at the annual meeting of stockholders, which merely alleged, as to the adoption of the resolution for the

sale, that certain of the stockholders present "attempted" to adopt the resolution, was indefinite in that particular.

8. Although it is not within the lawful power of a majority of the stockholders of a solvent going corporation to sell its entire assets and property over the objection of a minority stockholder, unless such power is expressly conferred by law, in the absence of some exigency or a condition requiring that course to be pursued, a different rule prevails when the corporation is an unprofitable and failing enterprise; where that condition exists the majority may dispose of the corporate property and take action towards the liquidation of its affairs.

9. The fact that two corporations are controlled by the same officers or stockholders does not prevent them from dealing with each other or the purchase by one of the property of the other, unless the acts of the majority in control are fraudulent as against the corporation and complaining stockholders, but the courts will closely scrutinize a sale of corporate property effected by majority stockholders to another corporation which they control or are interested in.

10. A sale of corporate property pursuant to the vote of majority stockholders to another corporation which they control or are interested in is neither void nor constructively fraudulent, but if it is unfair to the minority, or if any unconscionable advantage of their position has been taken by the majority, it may be set aside at the suit of the minority.

11. In an action by a minority stockholder to set aside a sale of the entire corporate property made pursuant to a resolution adopted at an annual meeting of the stockholders, *Held*, that it appeared by the averments of the petition that an exigency may have arisen which would authorize the sale complained of, since upon such averments the corporation was a losing one and in a condition requiring the disposition of its property to pay its debts, and that if the sale was made it was made pursuant to certain resolutions referred to in the petition for a consideration stated in the petition for the purpose of liquidating the indebtedness of the company equaling the amount of the par value of the issued and outstanding capital stock; and *Held* further, that, in the absence of an allegation to the contrary, it was proper to assume that, if the sale was made, the said debt was paid as the result thereof.

12. In an action by a minority stockholder to set aside an alleged fraudulent sale of corporate property an allegation in the

petition that at the time of the sale certain individual defendants were associated together as partners in a firm to which the company was indebted and to which the money realized from the sale was to be paid in liquidation of said indebtedness, and that two of the individual defendants named, brothers-in-law of another named individual defendant, "and all of the said parties," were the particular holders and controlers of the corporation to which the property was sold, *Held*, that the petition was at least indefinite and uncertain as to who were meant by "all of the said parties," and that it ought not to be assumed on demurrer to the petition that any defendant, either individually or in combination with others, had a controlling or any other interest in the purchasing corporation, unless the fact was definitely alleged; and, hence, the averments to the effect that the purpose of the sale was to obtain the corporate property for less than its reasonable, fair, or market value, applied only to the said three defendants last specifically named.

13. Where, in an action by a minority stockholder to set aside the sale of the corporate property to another corporation pursuant to a resolution adopted at the annual meeting of the stockholders of the selling corporation, it was alleged that objecting stockholders stated at the meeting that a much greater price could be obtained if an endeavor was made to do so, *Held*, that said allegation had no further effect than to show that said statement was made, and did not amount to an allegation that a greater price could in fact have been obtained; it not being alleged as a fact that a greater price could have been obtained for the property and that anyone was able, ready and willing to pay a greater price for it.

14. In an action by a minority stockholder to set aside a sale of the corporate property on the ground of alleged fraud and misconduct of the majority stockholders, through the vote of whom at the annual meeting a resolution was adopted providing for the sale, *Held*, as to an allegation in the petition that objecting stockholders stated at the time of the adoption of the resolution that a much greater price than that named in the resolution could be obtained for the property if an endeavor was made to do so, that if the allegation should be considered as alleging as a fact that a "much greater" price could be obtained, said words were too indefinite under the circumstances upon which to base

general charges of fraud, since, in addition to the possible natural increase in the value of the property, the words "much greater" might imply merely a fair and reasonable profit accruing to the purchaser.

15. In the absence of fraud, the fact that a difference of opinion may have existed between the majority and minority stockholders respecting the propriety of selling the corporate property would not alone justify interference by a court of equity in an action by a minority stockholder to set aside the sale.

16. In an action by a minority stockholder to set aside a sale of the corporate property, which, if made, was made pursuant to a resolution adopted at an annual meeting of the stockholders at which the complaining minority stockholder was present, where it appeared that at the time the indebtedness of the corporation equaled in amount the par value of the issued and outstanding capital stock, and that the sale was not objected to when the resolution was adopted on the ground that there was no necessity therefor, but the objection was on the sole ground that the selling price was less than the value of the property, *Held,* that the fact alone that such selling price was less than the alleged value of the property would not authorize the legal presumption of fraud on the part of the majority stockholders and trustees, the rights of creditors not being involved.

17. It cannot be presumed, in the absence of an averment to that effect, in an action by a minority stockholder to set aside the sale of corporate property on the ground of fraud and misconduct of the majority stockholders, that the property could have been disposed of for a greater price at the time when it was found necessary to dispose of it, or that a better price could have been obtained by delaying the sale, nor can it be presumed that the stockholders and trustees by whom the sale was effected received a personal benefit or advantage, without the averment of some fact tending to show it beyond the averment of a difference between the alleged value and the selling price.

18. The corporation itself is primarily the party entitled to bring an equitable suit to set aside a fraudulent sale and transfer of all the corporate assets by the majority stockholders and trustees, and an objecting stockholder can only sue for such relief when the corporation actually or virtually refuses to sue, and his recovery in such action can be no

other than that which the corporation itself might obtain, if the case had been brought by its own officers.

19. A stockholder may be estopped from maintaining an action to set aside the sale of all the corporate property, as where he has participated or acquiesced in the transfer, or has failed for an unreasonable time to take steps to set it aside.

20. There is no inflexible rule for determining what length of time will constitute unreasonable delay in bringing an action by an objecting stockholder to set aside the sale of corporate property, but whether the delay has been reasonable or unreasonable must depend upon the facts and circumstances of each case.

21. In an action by a minority stockholder to set aside a sale alleged to have been made of all the corporate property on the ground of alleged fraud and misconduct on the part of majority stockholders and trustees, it appeared by the petition that the plaintiff was aware of the proposed sale and the circumstances and conditions thereof at the time of the annual meeting and the meeting of the trustees when the respective resolutions providing for the sale referred to in the petition were proposed and adopted on October 2, 1906, and that he took no steps to prevent the sale until April 12, 1907, when he served upon each of the trustees a notice objecting to the sale, although in the meantime he had been informed that certain instruments had been executed by the president and secretary of the company pretending to convey the property to the proposed grantee, and that the possession of the same had been transferred, and the suit to set aside the sale was not commenced until July 29, 1909, the delay in bringing suit being explained merely by the statement that a suit in the same court upon the same cause of action had been brought by the plaintiff and another against all of the present defendants except one, and that said suit had been prosecuted until September 16, 1908, when it was dismissed without prejudice, without stating the reasons for the dismissal thereof, and the defendant not a party to the previous suit was another corporation to whom the property was alleged to have been transferred by the original purchasing corporation, and further, that all of the property had been disposed of by the last purchasing corporation, the purchasers thereof not being made parties to the action nor their names disclosed by the petition. *Held,*

. that, whatever the right of the selling corporation may
have been, or the plaintiff as a stockholder, to question
the validity of the sale even to the extent of demanding
its vacation, had the property remained in the possession
and control of either of the purchasing corporations,
neither the selling corporation nor the plaintiff suing on its
behalf would be entitled to a decree in the present action
setting aside the sale to the original purchasing corpora-
tion or a subsequent sale by said purchaser, since the
rights of other parties had intervened who presumably
obtained the property in good faith, there being no aver-
ments to the contrary, and no decree could be entered
which would affect their title.

22. It further appearing that the debt of the selling corporation
had been paid, and there being no offer to return the
consideration paid for the property by the original pur-
chasing corporation, nor the showing of any means by
which it could be refunded or returned, it would be in-
equitable to declare the sale void or by a decree to set it
aside; all of such conditions having resulted through the
laches of the plaintiff, if at any time the corporation or
the plaintiff might have sustained an action for such
relief.

23. An allegation in a petition by a minority stockholder to set
aside the sale of corporate property on the ground of
alleged fraud and misconduct on the part of majority
stockholders, where the only allegation of profit received
by any individual defendant was that the property was
disposed of for a sum much greater than the debt of the
company to pay which the property was sold, *Held,* that
said allegation did not necessarily imply an unfair or
unreasonable profit or condition, and was not sufficient to
require an accounting by the purchaser or any of the in-
dividual stockholders who assented to the sale and were
made defendants.

24. In such an action sufficient facts not being shown to justify
a decree setting aside the sale, the mere general allega-
tion, under the circumstances, as to the difference between
the selling price and the reasonable and market value of
the property is not sufficient to require an accounting by
either of the purchasing corporations.

[Decided December 9, 1912.]	(128 Pac. 612.)

ERROR to the District Court, Uinta County; HON DAVID H. CRAIG, Judge.

The material facts are stated in the opinion.

*T. Blake Kennedy,* for plaintiff in error.

Stating in a notice for an annual meeting of a corporation that it will be held not only for the election of trustees, but "for the transaction of such business as may properly come before the meeting," does not authorize the adoption of a resolution at such meeting providing for a sale of all of the corporate assets. (Ins. Co. v. Wescot, 80 Mass. 440.) To authorize the adoption of such a resolution at any corporate meeting the stockholders must be advised thereof in the notice calling the meeting. (Atlantic &c. Co. v. Mason, 5 R. I. 463; Jones v. Railroad, 67 N. H. 19; 10 Cyc. 327.) It appears from the petition that notice was duly given to the corporation to institute proper proceedings to protect the rights of the stockholders with reference to the sale in controversy, and the corporation having failed to commence any proceeding the action for proper relief may be maintained by the plaintiff, who is a stockholder, in his own name. (Wickersham v. Crittenden, 93 Cal. 17, 22 Pac. 788; Wright v. Oroville Co., 40 Cal. 20; Brewer v. Theater, 104 Mass. 378; State v. Holmes, 60 Neb. 39; Knoop v. Bohmrich, 49 N. J. Eq. 82; Taylor v. Exporting Co., 5 Ohio, 162; Gamble v. Water Co., 123 N. Y. 91; Barr v. R. R. Co., 96 N. Y. 444; Greaves v. Gouge, 69 N. Y. 154; Detroit v. Dean, 106 U. S. 537; Butts v. Wood, 37 N. Y. 317.)

A transaction in which a person acts at one and the same time for himself and in a fiduciary capacity must be closely scrutinized. This principle applies to transactions of directors of corporations. (Bank v. Iron Co., 97 Mo. 38; Pearson v. Ry. Co., 62 N. H. 537; Fitzgerald v. Constr. Co., 44 Neb. 463; Wardens &c. v. Rector, 45 Barb. 356; Ins. Co. v. Ins. Co., 14 N. Y. 85; Booth v. Robinson, 55 Md. 419; Hutchinson v. Mfg. Co., 57 Fed. 998; Cole v. Iron Co., 59

Hun, 217; Wilbur v. Lynde, 49 Cal. 290.) In some of these cases, and in many others, the act of controlling directors of two corporations dealing together is severely criticized. Directors of corporations are trustees for the stockholders and are held to a strict accountability. (Robinson v. Smith, 24 Am. Dec. 212; Abbott v. Rubber Co., 33 Barb. 578; Canning Co. v. Fraser, 81 Tex. 407; Butts v. Wood, 37 N. Y. 317; Flynn v. Railroad Co., 158 N. Y. 493; State ex rel. v. Holmes, 60 Neb. 39; Rabe v. Dunlap, 51 N. J. Eq. 40; Pearson v. R. Co., supra; Fogg v. Blair, 139 U. S. 118; Ryan v. R. Co., 21 Kan. 70.) A court of equity will afford relief against the misconduct, bad faith, and fraudulent actions of officers of a corporation. While the court will not presume to direct the management of a corporation, yet in the case of misconduct, bad faith, or fraud on the part of the officers, relief will be afforded to the injured party. This relief embraces injunctions, receiverships, accounting and the like, and is applicable under circumstances such as those shown in the petition in this case. See authorities supra. Delay in bringing the action is not fatal to the granting of such relief. (Fitzgerald v. Mallory, 44 Neb. 463; Montgomery v. Pickering, 116 Mass. 227; Tarlington v. Purvis, 128 Ind. 187; Foley v. Holtry, 41 Neb. 563.) Even should it appear that the plaintiff was guilty of laches, the objection could not be raised by demurrer. (Sage v. Culver, 147 N. Y. 241.)

*Herbert V. Lacey* and *John W. Lacey,* for defendants in error.

The allegation in the petition concerning the indebtedness of the corporation is a conclusive allegation that the company was financially embarrassed and that some action was necessary for the purpose of the payment of its liabilities. The petition clearly shows the nature of the objection made by some of the stockholders to the proposition for the sale of the corporate property, viz: that the proposed price was not the fair market value. There is, however, an entire absence of averment as to what the market value was, as

well as anything to show the intrinsic character of the property such as might disclose the value. For all that appears in the petition the alleged value may have been speculative merely. The form of the objection to the sale indicates a knowledge on the part of the plaintiff and other objecting stockholders that it was necessary that the property of the corporation should be sold and the business of the company closed. There is no averment in the petition that the company ever in fact conveyed any of its property to the Crawford Land Company.

The meeting at which the resolution directing the sale was adopted was the annual meeting, making it unnecessary to embrace in the notice of the meeting a statement that the proposition for a sale of the corporate property would be considered, at least when all the shareholders are present at the meeting for the purpose of transacting generally the business of the company. The plaintiff was present at the meeting and cannot complain of the absence from the notice of specific reference to the sale of the property. (Handley v. Stutz, 139 U. S. 417; Weinburgh v. Advertising Co. (N. J.), 37 Atl. 1026; Nickum v. Burckhardt (Or.), 47 Pac. 788; Jones v. Turnpike Co., 7 Ind. 547; Hill v. Atlantic &c. Co. (N. C.), 55 S. E. 854.) The proposition for the sale was acted upon by the shareholders in the first instance. When shareholders of a corporation meet as such they act individually and represent nothing but their own shares; no shareholder stands in a fiduciary relation to any other at such a meeting, but votes for his own interest. (Hodge v. Steel Corp. (N. J.), 54 Atl. 1.) The stockholders could rightfully have ratified the sale if it had been made or directed in the first instance by the trustees, if the facts in relation to the trustees are as alleged in the petition. But the petition shows that the stockholders took the initiative and directed the trustees to make the sale. Therefore, authorities bearing upon the fiduciary relation of directors of corporations and what they may do while acting as such are not here in point. Shareholders may, in the absence of

fraud or oppression, direct the sale of the entire property of the company when it is not prosperous and is indebted to the full amount of its capital stock. (Ditch Co. v. Zellerbach, 37 Cal. 543; Phillips v. Providence &c. Co. (R. I.), 43 Atl. 598; Price v. Holcomb (Ia.), 56 N. W. 407; Timber Co. v. Watkins, 109 Fed. 101.) In the cases cited and others, a court of equity refused to interfere under circumstances similar to those alleged in this petition. It fairly appears from the averments that the sale complained of was compulsory, for the purpose of paying the matured debt of the company, which equaled the amount of its capital stock. The plaintiff, when objecting to the proposition at the annual meeting, did not offer a higher price nor disclose that anyone was ready to purchase for a greater price than that fixed by the resolution. Again, at the meeting of the trustees, he merely objected on the ground that the price was too low, without offering a higher price or showing that any other person was ready to pay more. And after waiting three years he fails to show that a higher price would have been paid either by himself or any other bidder.

There is no averment that those who controlled the sale were interested in the purchasing company. The only averment in that respect is that John R. Arnold and Otto Arnold and Charles Stone were interested in that company. No other construction of the language of the petition in that particular is possible, although the sentence in which the averment appears is somewhat involved.

The plaintiff has been guilty of laches, and on this ground alone cannot maintain the action. The property has all disappeared, as alleged, and is beyond the reach of the parties to this suit. It is impossible, therefore, to set aside the conveyance and restore the property. But waiving that matter, it was the duty of the plaintiff in seeking the relief prayed for to have proceeded with diligence. (Rabe v. Dunlap (N. J. Eq.), 25 Atl. 959; Kinne v. Webb, 54 Fed. 34; McLean v. Clapp, 141 U. S. 429; Scheftel v. Hayes, 58 Fed. 457; Richardson v. Lowe, 149 Fed. 625; Romanoff

L. & M. Co. v. Cameron (Ala.), 33 So. 864; Dennis v. Jones (N. J.), 14 Atl. 913; Kerby v. Kerby, 57 Md. 345; Gutherie v. Lyon (Tex.), 98 S. W. 432; Dickinson v. Traction Co., 114 Fed. 232; Kessler v. Ensley Co., 123 Fed. 546; Coal Co. v. L. & T. Co., 127 Fed. 625; Corbus v. Mining Co., 187 U. S. 455.)

In this state there is no statute similar to that in New York to the effect that an objection that an action has not been commenced in time can only be taken by answer.   On the contrary, under our statute, like that of Ohio, the question of the statute of limitations may be raised by demurrer where it appears upon the face of the petition that the cause of action is barred.   (Sturges v. Burton, 8 O. St. 215; Commissioners v. Andrews, 18 O. St. 49; Upton v. Steele, 2 Wyo. 54; Cowhick v. Shingle, 5 Wyo. 87; Sav. Ass'n. v. Clause, 13 Wyo. 166; Bonnifield v. Price, 1 Wyo. 172.) In the absence of a statute like that in New York the question of laches in bringing an action may be raised by demurrer.   (Speidel v. Henrici, 120 U. S. 377; Wilson v. Wilson (Or.), 69 Pac. 923; Dringer v. Jewett (N. J.), 13 Atl. 664; Fogg. v. Price (Mass.), 14 N. E. 740; Phillips v. Piney C. & C. Co. (W. Va.), 44 S. E. 774; Taylor v. Slater (R. I.), 41 Atl. 1001; Leavenworth v. Douglass (Kan.), 53 Pac. 123; Johnson v. McKinnon (Fla.), 34 So. 272; Williams v. Soc., 1 O. St. 478; Scruggs v. Decatur M. & L. Co. (Ala.), 5 So. 440; Furlong v. Riley, 103 Ill. 628; Pearson v. David, 1 Ia. 23; Montgomery's Est. (Pa.), 3 Brewst. 306; McLung v. Sneed (Tenn.), 3 Head, 213.) The reasons for the rule requiring promptness in a suit for such relief are apparent.   When there has been delay, especially when property has been sold to third parties during the delay, it is the duty of the plaintiff to show an excuse for his delay, so that the court may be informed in the first instance of the equity of his cause, for if the cause as stated does not appeal to the conscience of the court, it will be insufficient.   There is more in this case than the mere lapse of time to bar the relief.   There is the very element which

in every case has been said to be a reason of the greatest strength requiring diligence, viz: the passing of the property into the hands of other persons not named in the petition.

There is no sufficient averment in the petition that the plaintiff sought redress within the corporation. Facts not averred in the petition are presumed not to exist. (Phillips v. Copper Co., 86 N. Y. Supp. 200; McClure v. Warner (Neb.), 20 N. W. 387; Ry. Co. v. Shepherd (Neb.), 58 N. W. 189; Sheridan v. Jackson, 72 N. Y. 172.) There is a supposed protest or notice attached to the petition, which the petition alleges was served upon each of the trustees, but in the petition itself there is no statement of the contents of the notice. Whatever was done, therefore, by the plaintiff in the way of demanding action by the corporation appears only in the paper attached to the petition. The principle is well settled that an exhibit attached to and filed with a pleading forms no part of it and will not be considered on the hearing of a demurrer. (Johnson v. Ins. Co., 3 Wyo. 140; Ins. Co. v. Kahn, 4 Wyo. 364.) If the resolutions for the sale of the corporate property were injurious to the company and to the plaintiff as a shareholder, it was the clear duty of the plaintiff to make every possible effort within the corporation itself to obtain a rescission of the action, first, by an appeal to the trustees and next by an appeal to the shareholders in a meeting of shareholders. (Hawes v. Oakland, 104 U. S. 450; Dillon Lee (Ia.), 81 N. W. 245; Ulmer v. Maine R. Est. Co. (Me.), 45 Atl. 40.) If there was any right to rescind the sale, the right was in the corporation. The plaintiff could only bring suit to rescind in the name of the corporation, and in this action he can succeed only as representing the corporation, and in case the corporation should have succeeded in a similar action.

He who seeks equity must do equity. This principle is clearly applicable upon the facts here, since the plaintiff does not offer to return the purchase price of the property

or any part of it. He seeks to set aside the sale and obtain
the property itself, as well as the consideration received for
it, if any sale was made. He makes no offer to return to
either of the purchasing companies the consideration paid
for the property. This failure on the part of the plaintiff
to do or even offer to do equity bars his right of recovery.
(Hinckley v. Pfister, 83 Wis. 64; Frinck v. Thomas (Or.),
25 Pac. 717; Wilcox v. San Jose &c. Co. (Ala.), 21 So.
376; Farwell v. Hanchett (Ill.), 9 N. E. 58; Weed v.
Page, 7 Wis. 503; Kimball v. Cunningham, 4 Mass. 502;
Gibson v. Lancaster (Tex.), 39 S. W. 1078; Hammond v.
Wallace (Cal.), 24 Pac. 837; Wood v. Nichols (Wash.),
32 Pac. 1055; Reeves v. Corning, 51 Fed. 774; Stuart v.
Hayden, 72 Fed. 402; Burnes v. Burnes, 137 Fed. 781;
Clint v. Oil Co. (Cal.), 86 Pac. 817; Modern Woodmen v.
Vincent (Ind.), 82 N. E. 475; Central &c. Soc. v. Mulford
(Colo.), 100 Pac. 423; Guilfoyle v. Pierce, 109 N. Y. Supp.
924, 89 N. E. 1101.)

POTTER, JUSTICE.

This action was brought by John Smith, who alleges in
the petition that it is brought on behalf of the Bear River
Land & Stock Company, a corporation, and on his own
behalf as a stockholder of said corporation, and on the be-
half of all other stockholders who may desire to come in
and be made parties to the cause and bear the expenses in-
curred therein. The defendants named in the petition are
Charles Stone, John H. Ward, George E. Pexton, John R.
Arnold, Otto Arnold, A. E. Bradbury, James Smith, J. C.
Riley, Crawford Land Company, a corporation, Bear River
Land & Stock Company, a corporation, and Bear River
Development Company, a corporation. The petition alleges
as a reason for joining James Smith and J. C. Riley as de-
fendants that the plaintiff has been unable to procure their
consent to be made plaintiffs in the cause. Each of the de-
fendants, except James Smith and J. C. Riley, filed a sep-
arate general demurrer to the petition, and said demurrers

having been argued and submitted to the District Court
they were each sustained, the plaintiff excepting thereto.
Thereupon the further order was made in the case that the
petition be dismissed with costs assessed against the plain-
tiff. The case is here on error, and the general question to
be determined is whether or not the petition states a cause
of action against the defendants or either of them.

The object of the action, stated generally, is to avoid a
sale of the property and assets of the Bear River Land &
Stock Company which may have been made and which the
petition seems to assume was made to the Crawford Land
Company, a corporation, pursuant to a resolution adopted
at the annual meeting of the stockholders of the Bear River
Land & Stock Company held on the 2nd day of October,
1906, and a like resolution adopted on the same day at a
meeting of the trustees of said corporation, and also a sub-
sequent sale of said property and assets alleged to have been
made by the Crawford Land Company to the Bear River
Development Company, and to require an accounting by
the defendants and each of them, except James Smith and
J. C. Riley, of the money received by them or either of
them from the sale of the assets of the said Bear River
Land & Stock Company and the amounts expended, and the
payment of alleged debts of said corporation.              :

. The petition alleges that at all the times mentioned therein
each of the companies above named was a corporation ex-
isting and doing business under the laws of the State of
Wyoming; that the plaintiff is a stockholder in the Bear
River Land & Stock Company, owning 98 shares of its
capital stock; that said capital stock consists of $150,000,
divided into 1,500 shares of the par value of $100 each, of
which 765 shares have been issued and were outstanding on
the 2nd day of October, 1906, the defendant Charles Stone
holding 228 shares, the defendant Otto Arnold 1 share, the
defendant John R. Arnold 1 share, the defendant George
E. Pexton 56 shares, the defendant John H. Ward 57
shares, the defendant A. E. Bradbury 115 shares, the de-

fendant James Smith 97 shares and the defendant J. C.
Riley 112 shares. That on said 2nd day of October, 1906,
the Bear River Land & Stock Company was indebted to
North & Stone, a co-partnership, doing a banking business
in Evanston, Wyoming, in about the sum of $76,500. That
the said co-partnership of North & Stone constitute, as
plaintiff is informed and believes, all of the defendants, ex-
cept James Smith and J. C. Riley, although in another par-
agraph of the petition in stating the names of the members
of that firm the name of John R. Arnold is omitted. That
on the 2nd day of October, 1906, the annual meeting of
the stockholders of said Bear River Land & Stock Company
was held in the town of Evanston, County of Uinta and
State of Wyoming, "for the election of trustees for the
ensuing year, and for no other purpose, and there were
present at said meeting said Charles Stone, Otto Arnold,
John Smith, James Smith, John R. Arnold and George E.
Pexton; that the notice calling said meeting contained no
notification that any other business than the election of
trustees of said corporation for the ensuing year would be
transacted, except that said notice stated that said meeting
was called 'for the transaction of all other business as may
properly come before the meeting,' and at said time the fol-
lowing named parties were elected as trustees for the en-
suing year, to-wit: Charles Stone, John H. Ward, George
E. Pexton, John Smith and John R. Arnold." That at said
stockholders' meeting all the stockholders present other
than John Smith and James Smith "wrongfully and against
the rights of said corporation and the stockholders thereof,
and with intent to defraud the same, and as plaintiff is in-
formed and believes, and therefore alleges the fact to be,
by reason of prearrangement between themselves, attempted
to adopt a resolution authorizing the president and secre-
tary of said company to sell all of the assets of said corpo-
ration, both real and personal, to the said defendant, the
Crawford Land Company, for the sum of $76,500.00; that
all the stockholders of the said Bear River Land & Stock

Company were not present at said stockholders' meeting, John H. Ward and A. E. Bradbury not being present thereat, and the said plaintiff John Smith and the defendant James Smith objected to said resolution and to the attempt of the stockholders present at said meeting to pass any such resolution, or to undertake to dispose of the assets of said corporation for any such price as that mentioned in said resolution, and notified said trustees that the price at which they were undertaking to sell the assets of said corporation was not the fair or market value thereof, nor the reasonable value of the same, and that a price far in excess of that could be procured for said property if an endeavor were made so to do." That immediately following the adjournment of said stockholders' meeting the said Charles Stone, John R. Arnold and George E. Pexton "wrongfully and against the rights of said Bear River Land & Stock Company and the stockholders thereof attempted to hold a meeting of the newly elected trustees of said Bear River Land & Stock Company, and this notwithstanding the fact that no notice of the holding of the same or the business to be transacted thereat had been given, and there was not present at said pretended meeting said trustee John H. Ward; that at said pretended meeting the said Charles Stone, John R. Arnold and George E. Pexton wrongfully and against the rights of said corporation and the stockholders thereof attempted and pretended to adopt a resolution authorizing the sale of all of the assets of said corporation, both real and personal aforesaid, for the sum of $76,500.00 to said Crawford Land Company, and attempted to authorize the president and secretary of said corporation to make, execute and deliver to said Crawford Land Company deeds and bills of sale and all other and further instruments necessary to convey said assets to said latter company; that said John Smith and James Smith being present at said pretended meeting objected to said resolution and to the attempt of said trustees to dispose of the assets of said corporation, and notified said trustees that the price at which they were undertaking

to sell said assets was not the fair or market value of the property, nor the reasonable value thereof, and that the price was far in excess of said price which could be procured for said property if an endeavor were made so to do and that the attempted act of said trustees was nothing more or less than an endeavor on their part to wrongfully dispose of the assets of said corporation to the injury of the minority stockholders to enable said trustees attempting to pass said resolution to gain and enjoy an individual and unjust advantage thereby."

That on the 2nd day of October, 1906, the said Bear River Land & Stock Company, as plaintiff is informed and believes, and therefore alleges the fact to be, was the owner of certain real estate described in the petition, "most of which said property was highly improved, and that the value of said property so belonging to said corporation was in excess of the sum of $70,000.00 and that at said time said corporation owned and possessed horses, cattle, hay, grain and other personal property of a value in excess of $55,000.00." And in another place in the petition it is alleged that the property of said corporation on said date was the reasonable and market value of $125,000.00, "which said fact was known to each of said trustees at said time." The petition further alleges upon information and belief that the defendants Stone, Ward, Pexton, Bradbury and Otto Arnold were at the time aforesaid, associated together in the banking business in Evanston, Wyoming, under the firm name of North & Stone, "and at all the time the said John R. Arnold and Otto Arnold, brothers-in-law of said Charles Stone, and all of the said parties were the particular owners, holders and controllers of the Crawford Land Company; that the said John R. Arnold was a mere nominal stockholder in the Bear River Land & Stock Company, and as a request of, and as an accommodation to the said Charles Stone, owning but one share of stock therein, and the said Otto Arnold was but a mere nominal stockholder in the said corporation at the request of, and as an accom-

modation to the said Charles Stone, owning but one share
in said corporation." That at said time "the said Bear
River Land & Stock Company was under the management
of the said Charles Stone, and that it was claimed by the
said Stone that the said company was indebted to the said
firm of North & Stone in the sum of $76,500.00; that no
money or other valuable consideration was paid by the said
Crawford Land Company to the Bear River Land & Stock
Company, and that upon the transfer to it of the entire
assets, the said Crawford Land Company conveyed all of
the assets of the Bear River Land & Stock Company to the
defendant, the Bear River Development Company, without
consideration of any kind, and that the said defendants here-
tofore mentioned, except the said James Smith and J. C.
Riley, were and are the stockholders, owners and controllers
of the said Bear River Development Company, and that all
of said transfers were made, as plaintiff is informed and be-
lieves, and so charges the fact to be, for the purpose of
obtaining property, worth at least $125,000, in satisfaction
of said alleged debt of $76,500.00 due to the said firm of
North & Stone, and for the purpose of defrauding the said
plaintiff, and the said James Smith and J. C. Riley out of
their interest in the Bear River Land & Stock Company.
Plaintiff is informed and believes that the said Bear River
Development Company has disposed of all of the assets to
(of) the said Bear River Land & Stock Company for a
sum much greater than the said alleged debt due to the
said North & Stone; that the acts of said stockholders of
said Bear River Land & Stock Company as such and as
trustees thereof were without any legal or proper proceed-
ings therefor, were in violation of the rights of said corpora-
tion and the stockholders thereof, and were an endeavor to
attempt to enable a majority of the trustees of said corpora-
tion to acquire an undue and illegal advantage over the
other stockholders of said company by reason of their and
through their own acts as trustees of said company." That
the transfer from the Crawford Land Company to the Bear

River Development Company was without consideration, "but as he (plaintiff) is informed and believes both of said corporations are insolvent, and said transfer was made simply for the purpose of defrauding this plaintiff and the said James Smith and J. C. Riley and depriving them of their stock in the said Bear River Land & Stock Company and procuring for the other defendants, except the said James Smith and J. C. Riley, the said difference between the $76,500.00 and the real value of the said property, to-wit: $125,000.00."

It is further alleged in the petition that on the 12th day of April, 1907, the plaintiff caused to be served upon each of the trustees of the Bear River Land & Stock Company a notice "in words and figures as set forth in exhibit 'A' attached hereto and made a part of this complaint; but notwithstanding said notice no endeavor or effort has been made by the officers or trustees of said corporation to investigate the facts set forth in said notice, or institute any proceedings of any description to preserve and protect the interests of said company or the stockholders thereof." That the plaintiff, together with James Smith and J. C. Riley, instituted a suit in said District Court on behalf of themselves and all other stockholders of the Bear River Land & Stock Company that might choose to come in and be made parties to said action "upon the same cause of action set forth herein against all the defendants, except the Bear River Development Company, and prosecuted said suit until the 16th day of September, 1908, at which time said action was dismissed without prejudice."

The prayer of the petition is, (1) That the attempted conveyance of the Bear River Land & Stock Company to the Crawford Land Company be decreed to be void. (2) That the conveyance from the Crawford Land Company to the Bear River Development Company be set aside and held for naught. (3) That the defendants and each of them, except James Smith and J. C. Riley, be required to account to the plaintiff and all others interested who may join in

the suit for the amount of money received by them or either of them from the sale of any of the assets of the Bear River Land & Stock Company and the amounts expended in the payment of alleged debts of the said company, and that the court may require the money in the hands of said defendants to be paid to the clerk of the court to be distributed pro rata to the stockholders of the said company. (4) And that upon their failure so to do judgment may be entered against them for such amounts as may be proper, and for such other and further relief as may be proper in the premises.

The petition is indefinite and uncertain in several important particulars. A defect of that kind is ordinarily to be corrected by motion to render the pleading more definite and certain by amendment, and is not ground for demurrer. We recognize the distinction in the rules of code pleading between an entire failure to state a cause of action and the statement of one in an imperfect and defective manner. But in the case of this petition the defect relates to so many material facts respecting which the averments in this kind of action ought to be reasonably definite and certain that it might properly be held, we think, to amount to a failure to state a cause of action rendering the petition demurrable. (Wheeler v. Pullman I. & S. Co., 143 Ill. 197, 32 N. E. 420, 17 L. R. A. 818.) As said in a recent similar case, "a bill founded upon fraud or misconduct which does not allege with certainty and definiteness tangible facts to sustain its general averments of such fraud and misconduct is insufficient, and cannot be sustained." (Smith v. Chase & Baker Piano Mfg. Co. (D. C.), 197 Fed. 466.) The indefinite character of many of the averments will be referred to as we discuss the propositions involved. It is sought by the petition to avoid and vacate a supposed sale of the assets and property of the Bear River Land & Stock Company, and to require an accounting by several of the defendants of the money received by them as the result of such sale. It is contended as one ground for avoiding the sale and setting it aside that the meeting of the stockholders at which

it is alleged that it was attempted to adopt a resolution authorizing the sale was without authority to consider or adopt such a resolution for the reason that the notice of the meeting did not specify that such matter would be considered. The meeting referred to was the annual meeting of the stockholders of the corporation; and presumably, there being no allegation to the contrary, it was held at the proper time and place. The notice stated that in addition to the election of trustees the meeting was called "for the transaction of all other business as may properly come before the meeting." The statute provided only that the trustees (directors) shall be annually elected by the stockholders at such time and place as shall be directed by the by-laws of the company; and that public notice of the time and place of holding such election shall be published not less than ten days previous thereto, in the newspaper printed nearest to the place where the operations of said company shall be carried on, and the election shall be made by such of the stockholders as shall attend for that purpose, either in person or by proxy, provided one-half of the stock is represented. There was no other statutory provision with reference to the notice of the annual meeting of the stockholders of a corporation, and no statutory provision with reference to the business that might be lawfully transacted at such meeting other than the election of trustees, nor was there any other statutory provision regulating or relating to the contents of a notice calling a meeting of the stockholders for the purpose of considering the question of the sale of its property. It was, however, provided by statute that the stockholders of a corporation, or the trustees (directors) if the certificate of incorporation so provides, shall have power to make by-laws as they shall deem proper for the management and disposition of the stock and business affairs of the company, not inconsistent with the laws of the state, and prescribing the duties of artificers and servants that may be employed, for the appointment of all officers and for the carrying on of all business within the objects and

purposes of the company. It is not shown by the petition what, if any, provision was made in the by-laws of the company with reference to the business that might be transacted at the annual meeting and the notice to be given of such meeting. It may be, therefore, that the notice here complained of complied in all respects with the by-laws so as to authorize the adoption of the resolution mentioned in the petition. But the plaintiff, who appears to be the only complaining stockholder, was present at the meeting and participated therein, and while he objected to the adoption of the resolution complained of it is not alleged that he made any objection to the form of the notice, or to the authority of the stockholders at such meeting to consider the question and adopt a resolution for the sale of all the assets and property of the corporation, at least for an adequate price. It appears by the petition that he and another stockholder who was present objected to the resolution upon the sole ground that the price at which it was provided by the resolution that the sale should be made was not the reasonable, fair and market value of the property, and that a price far in excess of that could be procured if an endeavor were made to do so. Under these circumstances any objection to the form of the notice of the meeting is not available to the plaintiff. (Thompson on Corp., Secs. 817-825.) It is, therefore, unnecessary to consider or determine whether in all cases the notice given of the meeting would be sufficient to authorize such a resolution as that which it is alleged was attempted to be adopted. With reference to such meeting it is further alleged that certain stockholders were present and that others were not present, but it is not alleged whether the stock of those who were not present was or was not legally and properly represented and voted at such meeting. It cannot be assumed, therefore, that any of the stock was not represented and voted at the meeting. Indeed the petition is indefinite respecting the adoption of the resolution mentioned, for it is merely alleged that certain of the stockholders present "attempted" to adopt the resolution.

It may be conceded that it is not within the lawful power of a majority of the stockholders of a solvent going corporation to sell its entire assets and property over the objection of a minority stockholder, unless such power is expressly conferred by law, in the absence of some exigency or a condition requiring that course to be pursued, the law being as stated in Cook on Corporations (6th Ed.), Vol. 2, Sec. 670, that a "dissenting stockholder may prevent the sale of all the corporate property where the corporation is a solvent going concern." But a different rule prevails when the corporation is an unprofitable and failing enterprise. (Id. and cases cited; Phillips v. Providence Steam-Engine Co., 21 R. I. 302, 43 Atl. 598, 45 L. R. A. 560; Price v. Holcomb, 89 Ia. 123, 56 N. W. 407.) The rule in such case is stated in Noyes on Intercorporate Relations as follows: "The general rule that a majority cannot sell the entire assets of a prosperous corporation is based upon the principle that a majority cannot control corporate powers to defeat corporate purposes. It is subject to the exception that such sale may be made as a step towards dissolution. The power of a majority to dispose of all the property of a *losing* corporation, however, is in furtherance of the purposes of the corporation and arises *ex necessitate*. When the further prosecution of the business of the corporation would be unprofitable, it is the duty, as well as the right, of the majority to dispose of its property and take action towards the liquidation of its affairs." (Sec. 111.) The fact that two corporations are controlled by the same officers or stockholders does not prevent them from dealing with each other or the purchase by one of the property of the other, unless the acts of the majority in control are fraudulent as against the corporation and complaining stockholders. (Smith v. Chase & Baker Piano Mfg. Co., supra.) "The courts will closely scrutinize a sale of corporate property effected by majority stockholders to another corporation, which they control or are interested in. Such a sale is not void nor constructively fraudulent. But if it is unfair

to the minority, or if any unconscionable advantage of their position has been taken by the majority, the courts will not hesitate, at the suit of the minority, to set the sale aside. Regardless of the means employed, when it appears that 'the majority have put something in their pockets at the expense of the minority,' a court of equity will grant relief." (Noyes on Intercorporate Relations, Sec. 114.) Upon the face of the petition it appears, we think, that an exigency may have arisen which would authorize the transfer complained of in this case, for the corporation appears to have been a losing one and in a condition requiring the disposition of its property to pay its debts. While there is some uncertainty in the petition respecting the consideration of the supposed sale to the Crawford Land Company we think the only reasonable construction of the allegation is that if the sale was made it was made pursuant to certain resolutions referred to in the petition, that the consideration thereof was the sum of $76,500, and that the sale was made for the purpose of liquidating the indebtedness of the company to North & Stone, which, as will be observed from the averments of the petition, equaled the amount of the par value of the capital stock of the company which had been issued and was outstanding, and in the absence of an allegation to the contrary it is also proper to assume that if the sale was made the debt due North & Stone was paid as a result thereof. The corporation was at the time in a condition prohibiting it from borrowing more money or incurring further indebtedness without rendering the officers assenting thereto personally liable therefor, for it was then provided by statute and continues to be so provided that "if the indebtedness of any such company shall at any time exceed the amount of its capital stock, the directors of such company assenting thereto, shall be personally and individually liable for such excess, to the creditors of such company." (Comp. Stat., Sec. 3992.) It appears, therefore, we think, upon the face of the petition, that the company was not in a prosperous condition, and that there may have existed rea-

sonable grounds, if not an absolute necessity, for a disposition of all the assets and property of the company for the purpose of satisfying its said indebtedness, and, although the fact of the indebtedness is alleged, there is an entire absence of averment to show that a necessity for the sale of the property did not then exist. Indeed the objection which it is alleged was made by the plaintiff and another stockholder, both at the meeting of the stockholders and at the meeting of the trustees, seems to have recognized that a necessity existed for such a disposition of the property of the company, for the only objection made had reference to the price or consideration mentioned in the resolution. It must be held, therefore, that the petition fails to show an absence of authority in the majority of the stockholders to adopt a resolution authorizing the property and assets of the company to be sold, unless the facts alleged are sufficient to show that a sale was made under such circumstances as to render it fraudulent against the corporation and the objecting stockholders.

A remarkable thing about the petition is that it fails to definitely allege the fact of a sale of the property and assets of the company to the Crawford Land Company. Clearly, it is not directly alleged that such a sale was made, or that the conveyances or instruments for the purpose of conveying the title to such assets and property authorized by the resolutions referred to were ever executed or delivered. That such a sale or transfer was in fact made is only inferentially alleged, if at all, by the statement in the petition, "'that upon the transfer to it of the entire assets, the said Crawford Land Company conveyed all the assets of the Bear River Land & Stock Company to the defendant, the Bear River Development Company, without consideration of any kind," and the further statement that "plaintiff is informed and believes that the said Bear River Development Company has disposed of all the assets to (of) the said Bear River Land & Stock Company for a sum much greater than the said alleged debt due to the said North &

Stone;" and the other statements in the petition charging
the acts of the stockholders and the trustees to be wrong-
ful, fraudulent and illegal, which may or may not refer to
an actual sale and transfer of the assets and property of
the corporation, such statements being seemingly dependent
as to that upon the allegations respecting such a transfer
and sale. If it be assumed that such a sale was made then
the petition is further indefinite and uncertain respecting
the date of the sale and transfer of said assets and property
to the Crawford Land Company, and also as to the date of
the sale and transfer of said assets and property by the last
named company to the Bear River Development Company.
It is also uncertain whether it is alleged in the petition or
intended to be alleged that any of the individual defendants
other than John R. Arnold, Otto Arnold and Charles Stone
were the owners and controllers of the Crawford Land
Company. The allegation respecting that matter is so made
as to leave the petition open to the construction that the
individuals last above named were the only defendants who
owned and controlled the Crawford Land Company. It is
charged to be a fact that defendants Stone, Ward, Pexton,
Otto Arnold and Bradbury were associated together in the
banking business under the firm name and style of North &
Stone, "and at all the times the said John R. Arnold and
Otto Arnold, brothers-in-law of the said Charles Stone,
and all of the said parties were the particular holders and
controllers of the Crawford Land Company." Whether
by the words "all of the said parties" it was intended to
include all the defendants previously named, viz: Ward,
Pexton, Otto Arnold and Bradbury, is not clear. It is con-
tended by counsel for defendants in error that the petition
merely alleges in this respect that the defendant Stone and
his brothers-in-law, John R. Arnold and Otto Arnold, were
the owners and controllers of said Crawford Land Com-
pany. As above stated, we think the petition is at least
indefinite and uncertain in that particular, and that it ought
not to be assumed that any defendant, either individually or

in combination with others, had a controlling or any other interest in the Crawford Land Company, unless that fact is definitely alleged. Therefore, if it be assumed that the property was in fact sold to said company, the petition is to be understood as alleging that the only defendants who were interested in and controlled such company were Charles Stone, John R. Arnold and Otto Arnold, and it follows that the allegations to the effect that the purpose of the sale was to obtain the property for less than its reasonable, fair and market value apply only to the three defendants named, so far as such allegations refer to the individual defendants.

Disregarding for the purpose of further discussion the indefinite character of the averments respecting the sale of the property, and assuming it to be alleged that the property was sold and transferred to the Crawford Land Company for $76,500 to satisfy the debt due to North & Stone, we find that the only allegation of fact furnishing any basis for the general charges of fraud connected with such sale is that the reasonable and market value of the property was $125,000, and that such fact was known at the time "to each of said trustees." It is not alleged as a fact that a greater price could have been obtained for the property either at private or public sale, although it is alleged that the objecting stockholders informed the majority stockholders and the trustees at the meetings referred to that a much greater price could be obtained if an endeavor was made to do so. That allegation goes no further than to show that such a statement was made by the objecting stockholders at the meeting of the stockholders and also at the meeting of the trustees. It does not amount to an allegation that a greater price could in fact have been obtained. There is no averment that any greater offer was made for the property or that anyone was ready, able and willing at the time to pay a greater price for it. Nor is it alleged that any of the defendants received any money or benefit as a result of the sale other than the benefit which resulted to the cor-

poration in the payment of its indebtedness then due, except that it is alleged that the property was disposed of by the Bear River Development Company for a súm much greater than such debt. But it is not averred when that sale was made, and it might have been made a considerable time after the original sale to the Crawford Land Company, when the property had naturally increased in value, and after the purchaser had been at considerable expense in maintaining it. Beyond that the words "much greater" are too indefinite under the circumstances, in our opinion, upon which to base the general charges of fraud, for in addition to the possible natural increase in the value of the property the words "much greater" might imply merely a fair and reasonable profit accruing to the purchaser. It is apparent, therefore, we think, that the only allegation in the petition which would at all sustain the general charges of fraud is that respecting the reasonable market value of the property at the time. Whether that averment of fact would be sufficient under other circumstances to authorize a decree setting aside a. sale of corporate property on the ground of fraud or to require an accounting we need not consider or determine. The question is whether upon such facts as are alleged in this petition a cause of action is stated entitling the plaintiff to the relief demanded. This. is not an action as at law against officers and directors of a corporation for damages on the ground of mismanagement or fraudulent conduct in connection with the management, but the equitable jurisdiction of the court is attempted to be invoked for the purpose of restoring to the Bear River Land & Stock Company for the benefit of the stockholders the property that had been transferred or the money over and above the debt due to North & Stone received by the defendants or either of them.

In the absence of fraud the fact that a difference of opinion may have existed between the majority and minority stockholders would not justify interference by a court of equity. In Cook on Corporations, Sec. 684, it is said: "The

discretion of the directors or a majority of the stockholders as to acts *intra vires* cannot be questioned by single stockholders unless fraud is involved. This proposition of law is clearly, firmly and very properly established beyond any question." In North American Land & Timber Company v. Watkins, 109 Fed. 101, 48 C. C. A. 254, decided by the U. S. Circuit Court of Appeals, Fifth Circuit, the court say: "It is a general rule that courts of equity will not interfere in questions of corporate management or policy. They are reluctant to undertake the management of private corporations, and, in the absence of fraud, usurpation, or gross negligence or mismanagement equivalent to fraud, they generally refuse to interfere, and allow the majority of the stockholders to rule, leaving dissatisfied stockholders to redress their grievances by ordinary corporate methods." And again: "When the management is not shown to be fraudulent or dishonest, and when it is a matter of opinion whether it is wise or unwise, advantageous or disadvantageous, if the acts complained of be *intra vires,* there is no authority for equity to interfere. To do so would be to place the control indirectly in the hands of the minority whenever interference removes from control the officers selected by the majority. There is certainly no presumption that a minority stockholder is right, and a majority stockholder is wrong, in opinion as to values and the management of the corporate property." In that case it was sought by a minority stockholder to enjoin a sale of lands by the corporation, and it was alleged, though indirectly, that the lands sold were worth "many times the price" for which it had been sold, but it was not averred that anyone had offered or was willing to pay more for it. Referring thereto the court said: "Barring a general and indirect assertion of its value, no facts are stated from which the court can determine its value, or that it is intrinsically worth more than the sum for which it has been sold. What it cost the company is not averred, and it may be that the sale is for a large profit on its cost. * * * If it be true that these lands

are worth greatly over $3 an acre, it may be the honest
opinion of the directors that it is to the company's interest
to sell them for that price, no better price being now of-
fered.   *   *   *   This is a matter of corporate policy and
management.   The price at which the company will sell its
lands must necessarily be fixed by the directors, officers or
agents of the company selected by the stockholders.   A
minority stockholder should not, on the facts here alleged,
be aided by the court to control the action of the directors,
and himself be allowed to fix the price.   The substantial con-
troversy between the complainant and the defendant cor-
poration, as presented by his bill, is as to the sale of the
lands.   But for that sale, and the probability of other sales,
the bill would not have been filed.   The complainant thinks
it greatly to the detriment of the company to sell the lands
at $3 an acre.   The directors think that the sale at that price
is to the company's interest.   In such controversy, in the
absence of fraud and collusion, if the directors are acting
within the power conferred on them by the charter, the
courts cannot properly interfere.   *   *   *   While the courts
in a proper case will protect the rights of a minority stock-
holder, they cannot interfere with the right of legitimate
control by the officers representing a majority of the stock-
holders."   It was alleged in the case cited as it is in this
case that the complaining stockholder had stated to the of-
ficers his objection to the sale on the ground that the land
was worth much more than the price named.

There are general allegations of fraud in this petition,
based upon information and belief, referring to the purpose
for which the transfer was made to the Crawford Land
Company at the price named in the resolutions authorizing
the same, and also the purpose of the transfer by the Craw-
ford Land Company to the Bear River Development Com-
pany.   The allegations are that the purpose was to obtain
the property worth at least $125,000 in satisfaction of the
debt of $76,500, and to defraud the plaintiff and the de-
fendants Smith and Riley out of their interest in the cor-

poration, and that the purpose of the transfer to the Bear
River Development Company was to deprive the plaintiffs
and said Smith and Riley of their stock and to procure for
the other defendants the difference between the amount of
said debt and the alleged real value of the property. It is
not alleged, however, that either of the individual defend-
ants profited in any way by the transaction complained of,
though the object of the suit seems to be to obtain some
relief as against such defendants, since each of the purchas-
ing corporations is alleged to be insolvent. The allegations
of fraud, therefore, seem to be founded upon no fact al-
leged in the petition except that the value of the property
exceeded, as alleged, the price received for it, and that some
of the defendants who had voted for and authorized the
sale to the Crawford Land Company were interested in and
controlled that company, and all the defendants so acting
were interested in and controlled the Bear River Develop-
ment Company. The allegations as to the actual value of
the property are general, without the averment of any fact
as to the character or condition of the real estate or the im-
provements thereon, the number of horses or cattle, or the
amount of hay or grain, or the nature and condition of the
other personal property. In view of the fact that the com-
pany was heavily indebted at the time, the indebtedness
equaling in amount the par value of the capital stock that
had been subscribed for and issued, and that the sale does
not appear to have been objected to on the ground that
there was no necessity therefor, the fact alone that the
selling price was less than the value of the property as
alleged cannot be held, we think, to authorize a legal pre-
sumption of fraud on the part of the majority stockholders
and the trustees, the rights of creditors not being involved.
It certainly cannot be presumed in the absence of an aver-
ment to that effect that the property could have been dis-
posed of for a greater price at the time when it was found
necessary to dispose of it, or that a better price could have
been obtained by delaying the sale even if the situation per-

mitted delay, a fact not alleged. Nor can it be presumed that the stockholders and trustees whose acts are complained of received a personal benefit or advantage without the averment of some fact tending to show it, beyond the averment of the difference between the value and the selling price. It was incumbent, therefore, upon the plaintiff to allege fraud to entitle him on that ground to the relief prayed for. And in view of the facts disclosed by the other averments, and the absence of allegations showing that the defendants acquired in fact any undue advantage over the plaintiff or other stockholders, it is open to serious question whether the general allegations of fraud above referred to are sufficient to entitle the plaintiff to equitable relief on the ground of fraud.

It is not necessary to determine whether the facts alleged in this petition with reference to the terms and conditions of the sale to the Crawford Land Company, the resolutions authorizing the same, the purpose thereof, and the value of the property, would render the petition sufficient to enjoin the sale had an action been timely brought for that purpose; nor whether such facts would be sufficient, without an offer to refund the purchase price, to entitle the plaintiff to a decree setting the sale aside, if the property remained in the possession or under the control of either the Crawford Land Company or the Bear River Development Company. But if it be conceded that upon the facts alleged the plaintiff would have been entitled to equitable relief avoiding the sale, if he had brought an action therefor while the property remained in the possession of either of the companies named, or could be restored to the selling company, any right to such relief has been lost through the laches of the plaintiff appearing upon the face of the petition. For such acts on the part of the stockholders and trustees as those complained of the corporation itself is primarily the party entitled to bring an equitable suit for relief, and a stockholder can sue only on behalf of the corporation when the latter either actually or virtually refuses to prosecute. In

such case the recovery by the stockholder can be no other than that which the corporation itself might obtain were the case prosecuted by its own officers. (3 Pom. Eq. Juris. (3rd Ed.), Secs. 1094, 1095.) In Section 1095 Mr. Pomeroy says: "Whenever a cause of action exists primarily in behalf of the corporation against directors, officers, and others, for wrongfully dealing with corporate property, or wrongful exercise of corporate franchises, so that the remedy should be legally obtained through a suit by and in the name of the corporation, and the corporation either actually or virtually refuses to institute or prosecute such a suit, then, in order to prevent a failure of justice, an action may be brought and maintained by a stockholder or stockholders, either individually or suing on behalf of themselves and all others similarly situated, against the wrong-doing directors, officers, and other persons. * * * The stockholder does not bring such a suit because *his* rights have been *directly* violated or because the cause of action is *his* or because *he* is entitled to the relief sought; he is permitted to sue in this manner simply in order to set in motion the judicial machinery of the court. The stockholder, either individually or as the representative of the class, may commence the suit, and may prosecute it to judgment; but in every other respect the action is the ordinary one brought by the corporation, it is maintained directly for the benefit of the corporation, and the final relief, when obtained, belongs to the corporation, and not to the stockholder-plaintiff." (See also Wills v. Porter, 132 Cal. 516, 64 Pac. 896.) But a stockholder may be estopped from prosecuting such an action, as where he has participated or acquiesced in the transfer of the corporate property, or has failed for an unreasonable time to take steps to set it aside. For example, it is held that an injunction will not be granted, at the instance of a minority stockholder, to restrain a sale where such stockholder, by his laches, has permitted the interests of innocent persons to intervene so that it cannot be granted without inflicting serious injuries. There is no

inflexible rule for determining what length of time will constitute unreasonable delay in bringing such an action for equitable relief, but whether the delay has been reasonable or unreasonable must depend upon the facts and circumstances of each case. (Noyes on Intercorporate Relations, Sec. 116.) "After a stockholder has knowledge of or is chargeable with knowledge of an *ultra vires,* fraudulent, or negligent act of the directors, he must institute his suit, if at all, within a reasonable time thereafter. As to what will constitute a reasonable time depends on the circumstances of the case. The length of time during which a stockholder may delay in bringing his suit varies with each case, according to the circumstances of that case. The court requires that reasonable promptness be exercised so that large investments of new money or changes in the ownership of the stock or property may not be prevented or jeopardized by an unreasonable delay on the part of a stockholder in objecting to the transaction." (Cook on Corporations (6th Ed.), Sec. 732.)

It appears by the allegations of the petition that the plaintiff was aware of the proposed sale and the circumstances and conditions thereof at the time of the annual meeting and the meeting of the trustees when the respective resolutions referred to in the petition were proposed and adopted, namely, on the second day of October, 1906, and that he took no steps to prevent the sale until the 12th day of April, 1907, when, it is alleged, he served upon each of the trustees a notice as set forth in an exhibit attached to and made a part of the petition. Without deciding whether that notice is properly a part of the petition or not, it appears by reference to it that prior to the notice the plaintiff had been informed that certain instruments had been executed by the president and secretary of the company pretending to convey to the Crawford Land Company the title to all of the assets of the Bear River Land & Stock Company, and that the possession of all of said property had been transferred to said grantee. And this suit was not

commenced until July 29, 1909. The only explanation of the delay in bringing suit, if it may be treated as an expla-nation, is found in the averment in the petition that a suit in the same court upon the same cause of action was brought by the plaintiff, together with James Smith and J. C. Riley, against all the defendants, except the Bear River Development Company, and that said suit was pros-ecuted until the 16th day of September, 1908, at which time the suit was dismissed without prejudice. When that suit was commenced is not stated, nor the reasons for the dismissal thereof, and nearly a year elapsed between the time of its dismissal and the commencement of the present action. It further appears that before this action was com-menced all the property had been disposed of by the Bear River Development Company, but the purchasers are not made parties to the action, nor are their names disclosed by the petition. How long before the action was commenced the property had been so disposed of does not appear, and we have no right to assume from any averment found in the petition, even if that would benefit the plaintiff, that such disposition of the property occurred after the dismissal of the former suit. Whatever the right of the corporation may have been, or the plaintiff as a stockholder, to question the validity of the sale even to the extent of demanding a decree vacating it, had the property remained in the posses-sion and control of either of the purchasing corporations, a matter which need not be decided, it is clear that upon the facts aforesaid the corporation or the plaintiff suing on its behalf would not be entitled to a decree in this action setting aside the original sale to the Crawford Land Company or the subsequent sale to the Bear River Development Com-pany. The rights of other parties have intervened who presumably obtained the property in good faith, there being no averment to the contrary, and as they are not made par-ties to the suit no decree to be entered herein could affect them or their title. And, further, the debt of the corpora-tion having been paid either by the Crawford Land Com-

pany or with the money which it paid for the property, and the property having passed out of its hands, as well as from the possession and control of the Bear River Development Company, and there being no offer to return the consideration paid for the property nor the showing of any means by which it could be refunded or returned, it would be inequitable to declare the sale void or attempt by a decree to set it aside. And this has resulted through the laches of the plaintiff, if at any time the corporation or the plaintiff might have sustained an action for such relief.

Upon the allegations of the petition the prayer for an accounting would seem to have been inserted as incidental to the relief prayed respecting a decree avoiding the sales. But treating the prayer for an accounting as separate and distinct, we think that sufficient facts are not stated to entitle the plaintiff as representing the corporation to an accounting from either of the defendants. It has already been stated that there is no averment that any individual defendant received any profit out of the transaction or transactions complained of, and that the only allegation in this respect is that the property was disposed of by the Bear River Development Company for a sum much greater than the debt due to North & Stone. But that does not necessarily imply an unfair or an unreasonable profit or advantage, and is not sufficient in our opinion to require an accounting by that company. The theory of the petition as to the situation and liability of the Bear River Development Company respecting the transactions complained of seems to be that that company occupied the same relation to the transaction as the Crawford Land Company, it being alleged that the stockholders and trustees of the Bear River Land & Stock Company, whose acts are complained of, own and control the Bear River Development Company, and that the property was transferred to that company by the Crawford Land Company without consideration. But as sufficient facts are not shown to justify a decree setting aside the sales or declaring them void, the mere general

allegation, under the circumstances alleged, as to the difference between the selling price and the reasonable and market value of the property cannot be held sufficient to require an accounting by either of the purchasing corporations, and that is the only allegation even tending to indicate any unfairness in the transaction, or that anything was unfairly or unjustly received by any defendant. We conclude, therefore, that the plaintiff has not shown a right to the equitable relief demanded, and that, therefore, the demurrers were properly sustained. The judgment will be affirmed.                                        *Affirmed.*

BEARD, C. J., and SCOTT, J., concur.