## ALSTER v. BRITISH TYPE INVESTORS, Inc., et al.

United States District Court
S. D. New York.
March 25, 1949.

William Rosenfeld and Benjamin Davidson, both of New York City (Abraham, Marcus, of New York City, of counsel), for plaintiff.

Spence, Hotchkiss, Parker & Duryee, of New York City (Kenneth M. Spence and Julius J. Teller, both of New York City, and Thomas L. Howe, of White Plains, N. Y., of counsel), for defendants British Type Investors, Inc., Allied International Investing Corp. Scottish Type Investors, Inc., and Empire American Securities Corp.

Alexander & Green, of New York City (Clyde W. Sorrell and Eugene Z. DuBose, both of New York City, of counsel), for defendant Automatic Products Corp.

RIFKIND, District Judge.

This stockholder's derivative suit arises out of the same transaction which formed the subject of Upson v. Otis, 2 Cir., 1946, 155 F.2d 606; Marcus v. Otis, 2 Cir., 1948, 168 F.2d 649; Id., 2 Cir., S.D.N.Y., 169 F.2d 148. The action is by a stockholder of Automatic Products Corporation (Automatic), for the benefit of Automatic, against four members of a family of corporations: British Type Investors, Inc. (British), Allied International Investing Corporation (Allied), Scottish Type Investors, Inc. (Scottish), and Empire American Securi-

ties Corporation (Empire).[1] The corporate family included two additional members: the aforementioned Automatic, beneficiary of this action, and Majestic Radio and Television Corporation (Majestic). By stipulation, the evidence set forth in the record on appeal in Marcus v. Otis together with the exhibits are incorporated in this case. The fact inferences drawn from that record by the Court of Appeals are stipulated to be the facts in this action.

Briefly summarized, the facts are: The directors of Automatic caused it to lend money to themselves and others of a group, including British, Allied, Scottish and Empire, formed for the purpose of acquiring Majestic stock. Therewith the borrowers bought from Dumont Radio and Television Corporation (Dumont) a large number of shares of Majestic. The sums borrowed have been repaid with interest. Plaintiff, a stockholder of Automatic, seeks to recover, on behalf of Automatic, the profits made by the corporate defendants from the sale of the Majestic shares they so obtained.

The familial relationship among the six corporations is established by these undisputed facts:

British owned 56% of the voting stock of Allied, 64% of the voting stock of Empire, and 100% of the voting stock of Scottish. Allied owned more than 39% of the outstanding shares of Automatic, which constituted a controlling interest; Automatic owned more than 40% of the common stock of Majestic and Allied owned more than 18% of the common stock of Majestic; so that Automatic and Allied held a controlling interest in Majestic.

■ Messrs. Franklin, Otis, and Hutchinson constituted three of the four directors of British, Allied and Scottish, three of the five directors of Empire, and three of the six directors of Automatic. Franklin and Otis held a controlling interest in British.[2] They were officers and composed the finance committees of British, Allied, Scottish and Empire, and were empowered to buy and sell securities on behalf of each of them.

At a meeting of the Board of Directors of Automatic, held in Chicago on April 20, 1943, at which Otis, Franklin and Hutchinson were present, among others, the decision was taken to buy, with Automatic's funds, Dumont's entire interest in Majestic. At this meeting the allocation of the stock to be purchased was made among the directors of Automatic, employees of Majestic, and the four corporate defendants in this action. Shortly thereafter, this decision was executed. In Marcus v. Otis, the Court of Appeals held that the action of the directors of Automatic, in lending Automatic's funds to themselves and to the wife of one of them constituted a conversion of the property of the corporation and a breach of their fiduciary duty and that each of the directors was primarily liable for the amount converted by him, with interest, and for the profits realized by him and secondarily responsible for the like liability of the others. Marcus v. Otis, by its pleadings, did not assert the liability of the corporations which are defendants in this action, nor did it attempt to impose liability upon the directors for the profits realized by these corporations.

This case presents the question whether the corporations who benefited from the conversion of the funds of Automatic are likewise accountable for the profit realized by them from the resale of the Majestic shares allocated to them.

Jurisdiction exists by virtue of diversity of citizenship; plaintiff is a citizen of Illinois and the defendant corporations are all citizens of Delaware; and the amount in controversy exceeds the statutory requirement.

Plaintiff contends:

1. The defendants were fiduciaries of Automatic and their use of its funds to finance their purchases of Majestic stock constituted a conversion of such funds, wherefore they are liable for the profits they realized from the sale of the stock,

---

[1] Empire and Scottish have since been merged with Allied.

[2] Ownership of a majority of the voting stock of any corporate member of a network of interlocking corporations is not prerequisite to "control", either in fact or law. Corporate Fictions, 46 Columbia L.Rev. 533, 561 (1946), and cases cited.

just as the directors of Automatic were held liable in Marcus v. Otis, supra;

2. Whether fiduciaries or not, they are liable for having knowingly cooperated with Automatic's directors in the breach by the latter of their duty to Automatic;

3. Whether fiduciaries or not, they were not bona fide purchasers; having passively accepted benefits arising from the Automatic directors' breach of duty, they are liable on the same theory on which an Automatic director's wife, to whom Automatic's funds were loaned in this transaction, was held liable.

■ A true comprehension of the issues requires an appreciation of the salient conclusion of fact that Franklin and Otis controlled a network of corporations and exercised that control over each of them to accomplish a scheme whereby the funds of Automatic were employed, for the benefit of the defendant corporations, to buy securities for the avowed purpose of making a speculative profit upon their resale. Where such a network of corporate entities with interlocking directorates and cross investments is presented, it is often difficult to determine who really controls, who provides the impetus for multiple corporate action, and whose purposes are being served by such actions.[3] Here the facts compel the conclusion that from Otis, Franklin and Hutchinson came the impetus for participation by all the defendants herein. That their private purposes, rather than Automatic's, were furthered by such participation is a finding which, by the stipulation, I receive from Marcus v. Otis.

■ It cannot be disputed, as a matter of law, that those in control of a corporation are duty bound to refrain from injuring non-controlling interests or profiting at their expense. See Consolidated Rock Products Co. v. Du Bois, 1941, 312 U.S. 510, 522, 61 S.Ct. 675, 85 L.Ed. 982. This duty is fiduciary, see Southern Pacific Co. v. Bogert, 1919, 250 U.S. 483, 488, 39 S.Ct. 533, 63 L.Ed. 1099, analagous to that of a director towards his corporation. See Farmers' Loan & Trust Co. v. New York & N. R. Co., 1896, 150 N.Y. 410, 430, 431, 44 N.E. 1043, 34 L.R.A. 76, 55 Am.St.Rep. 689.

■ The director owes a fiduciary duty to all ownership interests, and it is for the protection of all that he is denied the right to profit from personal use of corporate funds. The controlling interests owe a duty to the non-controlling interests not to profit at their expense. Nor may they profit by use of corporate funds in which the non-controlling have, by definition, an interest, unless the controllers permit the non-controllers to profit proportionately. This is normally accomplished by permitting the corporation itself to earn the profits arising from the use of its funds. Nothing in Blaustein v. Pan American Petroleum & Transport Co., 1944, 293 N.Y. 281, 56 N.E.2d 705, casts doubt upon this rule, for there no use (or misuse) of corporate property or funds was involved. In Everett v. Phillips, 1942, 288 N.Y. 227, 43 N.E.2d 18, the common directors of two companies were said not to have breached their duty toward either company because it was not demonstrated that they did not act for the best interests of both in lending the money of one to the other. There the borrowing corporation was not sued for abusing its control over the lender.

■ The plaintiff's first contention is, in effect, that the fiduciary obligations of directors and controlling interests are identical, and that the prophylactic rule which denies to directors the right to profit from their personal use of corporate assets, even in the absence of corporate injury, is equally applicable to controlling stockholders. Thus boldly stated, plaintiff's proposed rule is broader than the circumstances of his case require. Here Automatic had minority interests. These minority interests were not permitted to participate in the scheme proportionately or otherwise. Instead, their proportionate share of the borrowed corporate funds was used for the benefit of the majority interests and their confederates. By forcing them to disgorge to Automatic, their profits, realized from the exploitation of the common property of all Automatic's stockholders, in effect, are

---

[3] Corporate Fictions, supra, at 576.

returned to all the stockholders in proportion to their interests.[4]

■ Plaintiff's second contention, that the defendants are liable as knowing participants in a fiduciary's breach of trust, provides another and perhaps traditionally more acceptable ground of recovery. One who participates with a director in a breach of the latter's duty toward the corporation is like a director, liable for his profits. Irving Trust Co. v. Deutsch, 2 Cir., 1934, 73 F.2d 121; Cahall v. Lofland, 1921, 12 Del.Ch. 299, 114 A. 224. Franklin and Otis were authorized to buy and sell securities for all four corporate defendants, and their involvement of these defendants as purchasers was ratified by the several boards of directors. No abstruse exposition of elementary doctrines of agency is required to find that the defendants knowingly participated with Automatic's directors in their breach of duty to Automatic.

■ The defendants urge that the "business judgment" rule protects them from liability in the same fashion that the Court of Appeals, in Marcus v. Otis, held it protected the directors with respect to the participation of several employees of Majestic in the syndicate. The analogy is inappropriate. To extend credit to employees of a subsidiary and thus afford them the opportunity to acquire a stock interest in their employer may encourage their best efforts on its behalf. But the corporate defendants herein did not render any services to Majestic or Automatic, the proper performance of which it might be reasonable to encourage in such fashion. The corporate defendants here appear to be in the same position as all the other participants whom the Court of Appeals held to be liable.

It is unnecessary to deal with plaintiff's third contention.

Plaintiff is entitled to judgment in accordance with the conclusions of law filed herewith.

The issues of this cause were tried to the court on November 26, 1948. I hereby make the following findings of fact and state my Conclusions of Law.

Findings of Fact

1. Plaintiff is, and has been since February 14, 1936, the owner and holder of shares of common stock of defendant Automatic Products Corporation, the name of which has, since the institution of this action, been changed to Automatic Steel Products, Inc., and it will hereinafter be referred to as "Automatic".

2. Plaintiff is, and has been since prior to the institution of this action, a citizen of Illinois.

3. The defendants Automatic, British Type Investors, Inc. (hereinafter called "British"), Allied International Investing Corporation (hereinafter called "Allied"), Scottish Type Investors, Inc. (hereinafter called "Scottish") and Empire American Securities Corporation (hereinafter called "Empire") are all corporations which were organized under the laws of the State of Delaware prior to December 2, 1942, and all defendants exist under the laws of Delaware and have their principal offices in that state.

4. Edward V. Otis and Curtis Franklin and members of Otis' immediate family have, from January 1, 1941 to March, 1946, owned and held about 85% of the outstanding Class B stock of British, which class was, until about September, 1945, the sole class of voting stock of British.

5. During the period from April 20, 1943 to April 26, 1943, British owned 10,467 shares (more than 43%) of the 24,179 outstanding preferred shares of Allied, and 53,876 (more than 59%) of the outstanding 90,385 shares of Allied common stock, which ownership amounted to 56% of the voting stock of Allied and constituted a controlling interest.

---

[4] The financial reality of a transaction such as this, excluding from consideration Automatic's directors' personal profit, is that those in control of the "enterprise entity" use the contribution of a minority interest in one corporate component of the enterprise for the benefit of the entire enterprise, or of other components, in which their proportionate interest far exceeds that of the minority of the one component. Thereby that minority is deprived of its proportionate share of the benefit. Cf. Berle, The Theory of Enterprise Entity, 47 Columbia L. Rev. 343 (1947).

6. During the period from April 20, 1943 to April 26, 1943, Allied owned 79,000 shares (more than 39%) of the 199,300 outstanding shares of stock of Automatic, which ownership constituted a controlling interest.

7. During the period from April 20, 1943 to April 26, 1943, British owned 10,286 of the 12,862 outstanding shares of preferred stock of Empire, and 34,306 shares (more than 64%) of the 53,065 outstanding shares of Empire common stock, the common stock alone having voting power.

8. During the period from April 20, 1943 to April 26, 1943, British owned 1,203 of the 3,139 outstanding shares of Scottish Class A stock, and all of the 20,000 shares of the Scottish Class B stock, which Class B stock had sole voting power but no equity.

9. Majestic had issued a small number of preferred shares, a few debentures, and 786,375 common shares, of which before December 2, 1942, Automatic had acquired 325,570, and Allied 147,771; so that together their holdings came to nearly two-thirds of the total issue.

10. Prior to the trial of this action the defendants Allied, Scottish and Empire were merged under the name of Allied International Investing Corporation.

11. At all meetings of the stockholders of Automatic during the years 1942 to 1945, inclusive, at which directors were elected, the Automatic stock owned by Allied was voted, and its votes represented more than 50% of the votes cast.

12. During the years 1942 and 1943 the directors of British, Allied and Scottish were the following: Arthur Bailley-Blanchard, Curtis Franklin, Edward V. Otis, William Hutchinson, and the same individuals, with the addition of Thomas L. Fowler, were the directors of Empire.

13. During the year 1943 the directors of Automatic were the following: Curtis Franklin, Edward V. Otis, William Hutchinson, Byron D. Kuth, William R. Harrison, Eugene A. Tracey.

14. The officers of all the defendants during the year 1943 and 1944 were the following: Edward V. Otis—President; Curtis Franklin—Treasurer; Curtis Franklin—Secretary; Adelaide Riker—Ass't Secretary, except that Automatic also had a vice-president, William Hutchinson, one of its directors.

15. During the year 1943 Edward V. Otis and Curtis Franklin were the Finance Committee of each of the defendants other than Automatic, so constituted by action of the respective Boards of Directors of said defendants, pursuant to their By-Laws.

16. Edward V. Otis and Curtis Franklin had authority to purchase, sell and subscribe for securities on behalf of British, Allied, Scottish and Empire.

17. Commencing April 1, 1943, Eugene A. Tracey negotiated with Allen B. DuMont Laboratories, Inc. (hereinafter called "DuMont") for the purchase of its holdings of securities of Majestic Radio & Television Corporation (hereinafter called "Majestic"), which were: 91,414 shares of common stock, 598 shares of preferred (convertible into 1495 shares of common), $22,474.20 of debentures, and an option to purchase from Majestic 100,000 shares of its common stock at $1 per share.

18. At a meeting of the Board of Directors of Automatic on April 20th, at which all directors were present, with the exception of Kuth, Tracey proposed that Automatic finance the purchase in consideration of shares to be allotted to it at a nominal price, or 6% interest, that half of the shares (including the option shares) be taken by himself and others, including eight key employees of Majestic, and that certain numbers of shares be allocated to each of Automatic's directors.

19. On April 20th the market value of Majestic common stock was $1.80 per share or more; the cost of the stock purchased from DuMont, on the assumption that the option would be exercised, was about $1.16 per share.

20. At the said meeting of April 20th, the following resolution was passed, to which all the directors agreed, including the absent one, Kuth:

"The Chairman stated that the Corporation had been given the opportunity to acquire, as part of a group, the entire investment of Allen B. DuMont Laboratories, Inc. in Majestic Radio & Television Corporation consisting of 91,414 shares of com-

mon stock, 598 shares of preferred stock which are convertible into 1,495 shares of common stock, an assignable option to purchase at $1.00 per share all or any part of 100,000 shares of Common stock at any time or from time to time on or before June 25, 1944 and $22,474.20 principal amount of Ten-Year 5% sinking fund debentures for a cash payment of $137,000 and involving a further payment of $100,000 upon exercise of the option and that these debentures and shares had been subscribed for by the undermentioned persons for payment on or before November 30, 1943, except as to the debentures which have been paid for in full.

### Shares to be Acquired

Common Shares .......................................... 91,414
Common Shares upon conversion of Preferred.............. 1,495
Common Shares upon exercise of option.................. 100,000
  Total ............................................... 192,909

### Subscription for Shares

| | Price per Share | Shares | Dollar Amount |
|---|---|---|---|
| Mrs. Cora Casagrande............. | $1.20 | 10,000 | $12,000.00 |
| Mrs. Florence Freese.............. | do | 1,000 | 1,200.00 |
| Dudley E. Foster................. | do | 1,000 | 1,200.00 |
| Hugh H. Gilmore.................. | do | 500 | 600.00 |
| Joseph J. Neri .................. | do | 500 | 600.00 |
| Edward F. Barile ................ | do | 500 | 600.00 |
| Harry T. Byrne .................. | do | 250 | 300.00 |
| Robert M. Hall .................. | do | 250 | 300.00 |
| Mrs. Marie L. Tracey ............ | do | 71,500 | 85,800.00 |
| Curtis Franklin ................. | do | 10,000 | 12,000.00 |
| Edward V. Otis .................. | do | 10,000 | 12,000.00 |
| William H. Harrison ............. | do | 5,000 | 6,000.00 |
| William Hutchinson .............. | do | 3,000 | 3,600.00 |
| Byron D. Kuth ................... | do | 3,000 | 3,600.00 |
| British Type Investors, Inc. ...... | do | 11,771 } | 53,738.70 |
| do ........................ | 1.50 | 26,409 } | |
| Scottish Type Investors, Inc......... | 1.20 | 3,000 | 3,600.00 |
| Allied International Investing Corporation ........................ | do | 2,229 | 2,674.80 |
| Empire American Securities Corporation .......................... | do | 8,000 | 9,600.00 |
| Automatic Products Corporation.... | 57¢ | 25,000 | 14,101.98 |
|   Total ................... | | 192,909 | $223,515.48 |

$22,474.20 of Debentures purchased by Majestic Radio & Television Corporation for .................................... 13,484.52
  Total ........................................ $237,000.00

"The stock acquired by this Corporation from the DuMont interests is subject to an option to E. A. Tracey to purchase 20,000 shares at $2.00 per share and 20,000 shares at $2.50 per share at any time or from time to time on or before May 1, 1945 as to 20,000 shares and on or before May 1, 1946 as to 20,000 shares, and Mr. Tracey has agreed to waive his rights to the three-fourths or 30,000 of the 40,000 shares under option. After full discussion, upon motion duly made and seconded, the above proposal was unanimously approved."

21. The first eight names in the list under "Subscriptions for Shares" in the foregoing resolution were the names of eight employees of Majestic, or their wives; and Mrs. Marie L. Tracey was the wife of Tracey.

22. It was the understanding of the directors of Automatic that the shares purchased from DuMont were to be held by Automatic as security for the amounts to be paid by the "Subscribers" for their stock.

23. Prior to April 26, Allied and Automatic owned almost two-thirds of the total outstanding common stock of Majestic; and British owned no more than 5,000 shares.

24. Before the closing of the transaction with DuMont on April 26th, each of the "subscribers" listed in the resolution delivered to Automatic a writing containing an agreement to pay it, on or before November 30, 1943, the price for the shares indicated in the resolution, and a power of attorney for the shares.

25. On April 20th, Franklin and Otis, on behalf of British, Allied, Empire and Scottish, agreed, for said defendants, to the subscriptions indicated in the resolution; and on April 26th they, on behalf of the same corporations executed and delivered the writings and powers of attorney referred to in the preceding finding.

26. The respective Boards of Directors of British, Allied, Scottish and Empire after April 26th ratified the acts of Franklin and Otis in this transaction after the transaction involved herein had been reported to them.

27. On April 26th Franklin delivered Automatic's check for $137,000 to DuMont and DuMont delivered to Franklin the Majestic securities; and on May 10th Automatic exercised the option for 100,000 shares and paid Majestic the sum of $100,-000.

28. On April 27th new certificates were issued in exchange for the 91,414 common shares and the 598 preferred shares acquired from DuMont in the following names: British—598 preferred shares and 36,685 common shares; Allied—2,229 common shares; Scottish—3,000 common shares; Empire—8,000 common shares; Automatic—25,000 common shares; Curtis Franklin—5,000 common shares; Edward V. Otis—5,000 common shares; William Hutchinson—3,000 common shares; Mrs. Marie L. Tracey—3,500 common shares; and on or about May 10th certificates for the 100,000 shares purchased by exercise of the option were issued in such manner as to allocate among the subscribers the amounts indicated in the April 20th resolution.

29. All of the certificates transferred or issued as indicated in the preceding finding were delivered to Curtis Franklin who held them, and the powers of attorney, on behalf of Automatic.

30. All the persons and corporations listed as subscribers in the April 20th resolution paid their subscription notes before November 30, 1943, except Mrs. Tracey who paid hers in March, 1944.

31. British sold all the stock it acquired in this transaction and realized a net profit of $24,875.70; Scottish sold all the stock it acquired in this transaction and realized a net profit of $1,799.90; Empire sold all the stock it acquired in this transaction and realized a net profit of $13,799.-75; and Allied sold all the stock it acquired in this transaction and realized a net profit of $1,797.70.

32. The attorneys and counsel for plaintiff in this action have rendered services of value to Automatic and their compensation was dependent upon successful outcome of this action.

## Conclusions of Law

1. This action represents a controversy between the plaintiff and defendants, citizens of different states, and the amount in controversy exceeds $3,000 exclusive of interest and costs; this Court has jurisdiction of the subject matter and the parties.

2. This action is a derivative class action in that it was brought to obtain a recovery in the right of, and for the benefit of, the corporate defendant Automatic

Products Corporation against the other defendants.

3. It was unnecessary under the facts in this case for plaintiff to make any effort to secure from the directors or shareholders of defendant Automatic or any of them the institution of any action upon the transaction involved herein; such demand would have been useless and futile; and their failure to make any such effort is excused.

4. The defendants British, Allied, Scottish and Empire are guilty of conversion in the transaction involved in this suit in that they used money of Automatic to finance their purchases of Majestic stock.

5. The defendants British, Allied, Scottish and Empire are not bona fide purchasers of the shares of Majestic which had been allotted to them at the meeting of the Board of Directors of Automatic held on April 20, 1943.

6. The defendants British, Allied, Scottish and Empire, with full knowledge of all the facts, knowingly participated with the directors of Automatic in the breach of the latters' fiduciary duties to such corporation.

7. Each corporate defendant other than Automatic is liable to Automatic for all profits made by it out of the purchase and resale of the stock of Majestic in the transactions involved in this action.

8. British Type Investors, Inc. is liable to Automatic in the amount of $24,875.70.

9. Allied International Investing Corporation (the merged company) is liable to Automatic in the amount of $17,397.35.

10. The judgment herein should contain a provision that this court retain jurisdiction for the purpose of receiving applications for and determining the amounts to be allowed, out of the recovery for the benefit of Automatic, for the payment of disbursements and expenses paid or incurred on behalf of plaintiff and for the reasonable value of the services rendered by the attorneys and counsel for the plaintiff herein.