CONTINENTAL SHEEP COMPANY, a corporation,
and RAMBLER SHEEP COMPANY, a corporation,

*Plaintiffs and Respondents,*

vs.

E. H. WOODHOUSE,

*Defendant and Appellant.*

(No. 2552; April 21st, 1953; 256 Pac. (2d) 97)

For the defendant and appellant the cause was submitted upon the brief and also oral argument of Clarence A. Brimmer, Jr., of Rawlins, Wyoming.

For the plaintiffs and respondents the cause was submitted upon the brief and also oral argument of Harold M. Johnson of Rawlins, Wyoming.

198

## OPINION

BLUME, Chief Justice.

This is an action commenced on June 4, 1949, brought by plaintiff corporations to recover money from the defendant paid to him by mistake. Trial was had to the court without a jury. Judgment was rendered for the plaintiffs in the sum of $4,538.50. From the judgment so rendered the defendant has appealed to this court. There is involved in the action the further sum of $91 and the sum of $193.50 which sums were admitted to have been paid to the defendant by mistake and judgment for these amounts was rendered in addition to the judgment above mentioned. These items having been admitted will not be considered hereafter.

Plaintiffs in their second amended petition alleged that the respective corporations own their land and

sheep separately but that they are operated under one manager and the income of both corporations is divided equally and their expenses are similarly divided. It is further alleged that defendant overcharged the plaintiffs in the sum of $8,432.88, each plaintiff being overcharged in the sum of $4,216.44; that this overcharge resulted by reason of the following particulars:

"(a) Plaintiffs were charged and paid for 169.17 tons of hay at $46 per ton, amounting to $7,781,82, which hay was trucked from Pinedale, Wyoming, and was referred to as Pinedale hay * * * when in truth and in fact the defendant only delivered to plaintiffs approximately 33 tons of hay trucked from Pinedale between January 15, 1949 and January 25, 1949, resulting in an overcharge for such Pinedale hay in the sum of $6,263.82.

"(b) Plaintiffs were charged and paid for 305.975 tons of hay * * * which hay was of Eastern origin and was delivered by railroad at Rawlins, Wyoming, when in truth and in fact defendant only delivered at Rawlins, Wyoming, to plaintiffs approximately 254.73 tons of such hay of Eastern origin on or about February 19, 1949, resulting in an overcharge therefore in the sum of $2,169.06." The total overcharge as above mentioned was $8,432.88, of which each of the plaintiffs sought to recover from the defendant in their petition one-half of the money or $4,216.44. Defendant's answer denies each and every allegation in the petition.

The court rendered an amended judgment in favor of the plaintiffs on October 6, 1951. The court found in its conclusions of fact that from January 1, 1949, to April 1, 1949, plaintiff corporations paid to the defendant, E. H. Woodhouse, the sum of $22,329.98 for 524.72 tons of hay; that defendant in fact delivered to plaintiffs only 424.72 tons of hay and that the agreed and

reasonable price of such hay so delivered was the sum of $17,791.28; that there was an overcharge to plaintiffs by defendant for the hay in the sum of $4,528.50; that such overcharge was the result of a mistake on the part of the plaintiff's manager and a mistake on the part of the defendant, E. H. Woodhouse, which said mistakes were coupled with and based upon certain of defendant's errors, omissions and upon his improper keeping of records; that the evidence of the mistakes herein found by the court is clear and convincing. The conclusions of law and the judgment in favor of the plaintiffs was in accordance with the facts so found by the court.

1. Counsel for appellant argue that the judgment of the trial court is sustained at best by a mere preponderance of the evidence and that such preponderance is not sufficient in a case such as before us. They cite us to 1 C.J.S. § 55, pp. 737, 738, in which it is stated: "In view of the great danger of opening accounts which the parties themselves have stated, an account stated will not be set aside except on clear and convincing proof of fraud or mistake; and this rule applies particularly where the attempt is made many years after the settlement, * * * . The amount of proof required may very with the circumstances, however; and it has been held that stronger evidence is required to overcome the settlement where the balance is simply agreed upon, and that slighter evidence of fraud or mistake is required where the party impeaching the account had little knowledge of the transactions involved, than if he had full knowledge of the facts." The text cites on the last point the case of Lee v. Reed, 4 Dana (Ky.) 109, which fully sustains it. In connection with the point as to what is clear and convincing evidence, we have been cited to a number of cases which, apparently are not altogether in har-

mony. Thus counsel cite us to Good Milking Mach. Co. v. Galloway, 168 Iowa 550, 150 N.W. 710, 712, in which the court stated: "Evidence is for the purpose of conveying to the mind a knowledge of the existence or nonexistence of disputed facts. When the evidence is such that the mind readily reaches a satisfactory conclusion as to the existence or nonexistence of a fact in dispute, then the evidence is, of necessity, clear and satisfactory." In the case at bar, the court made a finding that the evidence of payment by mistake was clear and convincing, and this finding seems to be in harmony with the Iowa case just cited.

It appears in this case that the payments on behalf of the plaintiffs complained of herein were made by C. A. Brimmer, Sr. He did not personally know the facts but he acted upon evidence deemed sufficient by him to warrant the payments to the defendant. His good faith is not attacked in any manner whatever. Nevertheless the fact is, as heretofore stated, that he had no personal knowledge of the amount of hay which was delivered by the defendant to the plaintiffs. He is an attorney at law with offices in the First National Bank Building in Rawlins, Wyoming, the same building in which J. C. Oliver, the accountant of the defendant, had his offices. And the defendant or his accountant must have known that Brimmer had no personal knowledge of the facts, and so the rule above mentioned, that slighter evidence of payment by mistake is required where the party paying the amount has no personal knowledge of the facts as mentioned in the case of Lee v. Reed, supra, appears to apply in the case at bar.

The question as to how much hay was delivered to the plaintiffs was, under the testimony in this case, a question of fact. The winter of 1948-1949 was very severe. The country at and about Rawlins is a sheep country. All or practically all of the owners of sheep

had insufficient hay to take care of their sheep during the winter and were compelled to ship in some from Missouri and other eastern states and to get some from Pinedale and Saratoga. The hay coming from the eastern states came, of course, by railroad. The Pinedale hay was delivered by one Mahaffey. The defendant Woodhouse purchased his Pinedale hay from Mahaffey, and then distributed it to various owners of sheep including the plaintiffs, in this case. It is admitted herein that the plaintiffs paid the defendant for 524.72 tons. The court allowed the defendant the price for 424.72 tons, a difference of 100 tons. How the court arrived at that particular figure is impossible to determine from the record before us. Counsel for the defendant did not attempt to enlighten us on the subject, and the conjecture of counsel for the plaintiffs seems unsatisfactory. The evidence on behalf of plaintiffs and that on behalf of defendant is irreconcilable. The reconciliation thereof, in so far as possible, was the task of the trial court and not that of this court. Defendant claimed that the following items of hay, as shown by exhibits introduced, were delivered to the plaintiffs, namely: Eastern hay as shown by exhibit L, 196,81 tons; eastern hay, as shown by exhibit N, 49.575 tons; Pinedale hay, as shown by exhibits C and L, 92.02 tons; Missouri and Saratoga hay, as shown by exhibit L, 17.145 tons (corrected to 18.06 tons in exhibit E); Pinedale hay as shown by exhibit M, 169.17 tons (corrected to 163.33 tons in exhibit D)—a total of 524.72 tons. Only the first two items were admitted by the plaintiffs; all the others were disputed. It is doubtful that defendant produced any evidence to support the claim for 17.145 tons and 169.17 tons. The exhibits showing these items were prepared by J. G. Oliver, now deceased. No one testified to the correctness thereof. Other facts show that the testimony in favor of the defendant cannot be accepted as fully

reliable. The defendant Woodhouse kept a record called Exhibit A in this case in which he entered the items of hay delivered to various sheep owners in and about Rawlins. The pages showing the hay delivered to the plaintiffs were torn out of Exhibit A both by J. C. Oliver, accountant for the defendant, as well as by the defendant himself. These pages, which represented original entries, were not produced in the trial of this case, although the witness Jones looked for them. That witness admitted that it is not customary to tear out pages from a book which is a book of original entries. And the fact of tearing out the pages from this book and losing them is a circumstance which throws considerable doubt on the fact that the evidence submitted by the defendant is correct. See 31 C.J.S. § 153, p. 845. Furthermore, the deliveries shown by Mahaffey, do not in many instances, correspond with the deliveries claimed to have been made by Woodhouse to the plaintiffs, and this is another circumstance which throws doubt on the claim of Woodhouse. It would seem —though we cannot be certain—that the court in the main credited the testimony of the witness Ogburn, who was the foreman of the plaintiffs from and after January 15, 1949. As we understand the testimony, Ogburn testified that he received from the defendant approximately 340 to 350 tons of hay and no more. But some hay was delivered by the defendant to the plaintiffs prior to January 15, 1949. Of this Ogburn had no knowledge. The witness Campos, a sheepherder for plaintiffs up to January 18, 1949, testified that there was delivered to the plaintiffs about three truck loads of hay which probably came from Pinedale. The witness Nelson, who had been foreman for plaintiffs prior to January 15 or 20, 1949, testified that from January 1, 1949, to the time that he ceased to be foreman, some 4 or 5 truck loads of hay, containing about 48 to 75 tons of hay, were delivered to the plaintiffs by the de-

fendant. Adding the maximum amount testified to by Nelson to the amount testified to by Ogburn, the addition comes close to the 424 tons found by the court to have been delivered to the plaintiffs by the defendant. The court would have been justified, as we view it, to have found a judgment for plaintiffs in a somewhat greater amount than was actually allowed. But only the plaintiffs can complain of this, and they do not do so. After exhaustively examining the testimony and the exhibits in detail, we have concluded that we can see no reason for disturbing the judgment of the trial court in connection with its finding as to the amount of hay actually delivered. We do not by any means mean to imply that defendant overcharged the plaintiffs purposely. It is altogether probable that he delivered the total amount of hay which he purchased from Mahaffey to someone, and he merely charged the plaintiffs with amounts of hay which were probably delivered to some other party and failed to keep a proper account. And this is perhaps not altogether surprising in view of the fact that he was kept busy in delivering hay to numerous parties during a severe winter.

2. The defendant offered certain exhibits in evidence, including from B to E. Objection was made to these exhibits as hearsay. They were testified to by the witness Jones, an accountant, who had worked with J. G. Oliver, since deceased. The court admitted the exhibits and stated that they "are material and although partially hearsay they are partially the direct evidence of the witness Jones and as such may be received for consideration in that respect and not as to the hearsay." Counsel for defendant argue that they should have been admitted for consideration unconditionally. It does not appear in what respect the court considered any of these exhibits as hearsay. The witness Jones admitted that he knew nothing about exhibit E and,

if we understand correctly, he knew next to nothing personally about exhibit D which refers to 163 tons of hay. Further he did not know whether or not any of the items mentioned in that exhibit were actually delivered. So that it is quite clear that the court was justified in the statement which it made in this connection and the objection here considered must be overruled.

3. The court as heretofore stated found that the defendant charged the plaintiffs with 524.72 tons of hay delivered to the latter, whereas he actually delivered only 424.72, a difference of 100 tons, and rendered judgment accordingly. Counsel for defendant claim that the item of 524.72 tons taken by the court as having been charged to the plaintiffs was not justified in view of the second amended petition; that according to the allegations therein, the defendant charged plaintiffs for 169.17 tons of hay trucked from Pinedale and 305.975 tons of hay of other origin; that accordingly plaintiffs claim they were charged for 475.145 tons of hay and not for 524.72 tons and that this allegation should control herein. We see no merit in this contention. The allegations in the second amended petition do not say that the plaintiffs were not also charged with other items aside from the 475.145 tons of hay, as in fact they were. The charge for the delivery of some of the hay over and above that item was not disputed. The meaning of the allegation in the second amended petition in the light of the evidence is quite clear. The objection in this connection accordingly must be overruled.

It follows from what we have said that the judgment of the trial court should be and is affirmed.

Affirmed.

RINER, J., and HARNSBERGER, J., concur.