VOSS OIL COMPANY, Appellant
(Defendant below),

v.

Warren G. VOSS, Appellee (Plaintiff below),
and

Dale H. Voss, Appellee (One of defendants to Counterclaim below).

No. 3024.

Supreme Court of Wyoming.
Jan. 23, 1962.

Lathrop, Lathrop & Tilker and Carleton A. Lathrop, Cheyenne, for appellant.

Jones & Dumbrill and Chester S. Jones, Newcastle, for appellees.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, J.

Mr. Justice McINTYRE delivered the opinion of the court.

This is a suit in which Warren Voss as plaintiff sued the Voss Oil Company, defendant, to recover fees claimed by him as a director from August 1, 1955 to April 10, 1956, and to recover an unpaid salary as president of such company up to April 10, 1956. The company brought in Dale Voss, a third party defendant, and pleaded two counterclaims against both the plaintiff and third party defendant.

The first of these counterclaims is not involved on appeal. The second sought judgment against Warren Voss and Dale Voss in the amount of $39,502 with interest, on a claim that they made a secret profit through the drilling of 10 wells in 1954, at the expense of the defendant company. Dale Voss then set up a cross-claim for unpaid director's fees and expenses to April 10, 1956.

Judgment was awarded by the district court for the unpaid fees and expenses of both Vosses and for the salary claimed by Warren. The company's second counterclaim was disallowed. From this judgment the corporation has appealed.

Dale Voss was president of Voss Oil Company from its incorporation until July 15, 1955. At that time Warren became president and Dale became chairman of the board of directors. This arrangement continued to April 10, 1956. Warren was a son of Dale. He lived with his father, officed with him and shared with him as a partner in various oil and business enterprises.

On December 24, 1953, the Buckhorn Production Company made an operating agreement with Voss Oil Company under which it became obligated to drill 40 wells, the cost of such drilling to be charged to the Voss company. Buckhorn then contracted the drilling of these 40 wells to Weston Drilling Company at $4.50 per foot. Some time in 1953 or early in 1954, according to the Voss father and son, Newcastle Drilling Company "had an arrangement,"

apparently not in writing, with Weston to drill 25% of the 40 wells.

The time when this arrangement was entered into seems to be important in the determination of this case. It is possible that the appellees, Dale Voss and Warren Voss, have overlooked its significance. Considerable conflicting evidence was offered to the trial court in a dispute as to whether Dale Voss was or was not a partner in Newcastle Drilling Company when the wells in question were actually drilled. The judge concluded that he was not a partner at that time, and upon that basis he gave judgment against the corporation on its second counterclaim.

■ We consider the date of the Weston-Newcastle subcontract and not the time of its fulfillment as controlling. At the time such subcontract was made, according to all of the testimony, Dale Voss, the president of Voss Oil Company, was also one of the partners of Newcastle Drilling Company. He could not in this dual capacity gain or pass on any rights, by a subcontract or otherwise, under the contract which Voss Oil Company had made with Buckhorn, unless he could show by clear, convincing evidence that the entire transaction was fair and honestly made and that he did not profit to the disadvantage of the corporation. See Nicholson v. Kingery, 37 Wyo. 299, 261 P. 122, 124; Beadle v. Daniels, Wyo., 362 P.2d 128, 130; and 19 C.J.S. Corporations § 787, p. 164.

■ As was said in the Nicholson case, when it is shown that an officer has acted both for himself and for the corporation, the burden is cast upon him to show that the transaction was open, fair, and honestly made and that he did not profit to the disadvantage of the corporation. One of the tests of "fairness" in transactions of this kind is whether there has been a full disclosure. Shlensky v. South Parkway Building Corporation, 19 Ill.2d 268, 166 N. E.2d 793, 802; Remillard Brick Co. v. Remillard-Dandini Co., 109 Cal.App.2d 405, 241 P.2d 66, 74.

In the instant case, no evidence was offered by appellees to show that a disclosure was made, or to show that any of the company officers or directors or stockholders, except themselves, knew of the transaction or assented thereto. In fact, it is apparent that the company's counterclaim was made on behalf of the stockholders when the transaction and the profit resulting therefrom were discovered.

■ With respect to the profit of Dale Voss and the detriment to his corporation, it is admitted that he and his partners sold Newcastle Drilling Company on April 13, 1954 to Warren Voss for $25,000. Included in the sale were all of the partners' "right, title, interest, claim and demand in and to all of the property, materials, equipment, inventory, good will * * * and the firm name of Newcastle Drilling Company." This necessarily took in whatever interest or claim Dale Voss and his partners may have had in the voidable subcontract growing out of the Voss-Buckhorn operating agreement.

In the absence of evidence to show otherwise, it must be assumed that Dale Voss did profit by the sale of the Newcastle subcontract to Warren. The fact that the corporation suffered a detriment and the fact that the subcontract had value, which went to Warren, were both established by an undisputed showing that Warren engaged Black Hills Drilling Company to do the drilling of the 10 wells involved for $4.00 per foot. He collected $4.50 per foot from Voss Oil Company, through Buckhorn, and pocketed the difference of $39,-502.

Although Warren Voss claims that he was requested by someone from Weston Drilling Company "to see whether or not we could get Black Hills Drilling to go ahead and proceed with the drilling of the ten wells that they had to drill," it would be inconsistent with and a departure from appellees' position as fixed in the settlement of issues to assume that a new subcontract was made by Warren. In any event, we

fail to find sufficient evidence to justify either a finding that Warren made a new subcontract or that he earned $39,502 in in some other manner. His only claim to this profit will therefore have to stand or fall upon the validity or invalidity of the subcontract acquired by Dale Voss and his partners while Dale was also president of of Voss Oil Company.

■ Since this subcontract could only stand, as far as Dale Voss is concerned, by a showing on his behalf that it was fairly obtained and that Dale Voss did not profit therefrom to the detriment of the corporation, and since no attempt was made by appellees to make such a showing, it must be held that Dale Voss is liable for the $39,502 damage or loss which resulted to his cestui.

■■ As far as Warren Voss is concerned, he knew of his father's fiduciary position. One who knowingly cooperates with or assists a fiduciary in his dereliction is liable for the profit made and may be held to account for any advantage derived. Irving Trust Company v. Deutsch, 2 Cir., 73 F.2d 121, 123, certiorari denied Biddle v. Irving Trust Company, 294 U.S. 708, 55 S. Ct. 405, 79 L.Ed. 1243, rehearing denied 294 U.S. 733, 55 S.Ct. 514, 79 L.Ed. 1262, certiorari denied Deutsch v. Irving Trust Company, 294 U.S. 708, 55 S.Ct. 405, 79 L. Ed. 1243, Hammond v. Irving Trust Company, 294 U.S. 708, 55 S.Ct. 405, 79 L.Ed. 1243, Irving Trust Company v. Mendes, 294 U.S. 708, 55 S.Ct. 405, 79 L.Ed. 1243 and Bell v. Irving Trust Company, 294 U.S. 709, 55 S.Ct. 406, 79 L.Ed. 1243; Cahall v. Lofland, 12 Del.Ch. 299, 114 A. 224, 237; Alster v. British Type Investors, D.C.N.Y., 83 F.Supp. 949, 952.

Both Dale Voss and Warren Voss should therefore be held jointly liable for the profit of 50 cents per foot which was siphoned from Voss Oil Company without expense or cost to them.

■ The appellant corporation, in addition to its second counterclaim for restitution of the well-drilling profit, contends that Warren Voss should forfeit claims made by him for salaries and fees subsequenly earned as president and a director, and that Dale Voss should forfeit claims made by him for fees earned as a director, on account of their breach of trust. The services rendered by Warren as a director and president and by Dale as a director do not appear from the evidence to have any substantial connection, in time or otherwise, to a breach of trust. In view of this, the findings of the trial court concerning these salaries and fees will not be disturbed.

The district court judgment, insofar as it finds for appellees and against the appellant on the second counterclaim of Voss Oil Company, is reversed. All other parts of such judgment are affirmed.

Reversed in part and affirmed in part.