Birl LYNCH and R.C. Lynch,
Appellants (Defendants),

Eunice Lynch, Lynch Consultants, Inc., a Wyoming corporation, and Lynch Management Services (Defendants),

v.

Pat PATTERSON, in his individual capacity as stockholder of Lynch Consulting, Inc., a Wyoming corporation, Appellee (Plaintiff).

Pat PATTERSON, in his individual capacity as stockholder of Lynch Consulting, Inc., a Wyoming corporation, Appellant (Plaintiff),

v.

Eunice LYNCH, Appellee (Defendant),
Birl LYNCH, R.C. Lynch, Lynch Consultants, Inc., a Wyoming corporation, and Lynch Management Services (Defendants).

Nos. 84–185, 84–186.

Supreme Court of Wyoming.

June 14, 1985.

James R. McCarty, Casper, for Birl Lynch, R.C. Lynch and Eunice Lynch.

Harry E. Leimback, Casper, for Pat Patterson.

Before THOMAS,* C.J., and ROSE, ROONEY,** BROWN and CARDINE, JJ.

## PART I

ROSE, Justice.

These appeals stem from a stockholders' derivative action brought by Pat Patterson, a minority stockholder of Lynch Consulting Services, Inc., to recover damages allegedly resulting from actions taken by the three corporate directors in violation of their fiduciary duties to the corporation. The defendant directors and corporation counterclaimed against Patterson, alleging that he breached his fiduciary duties as a former director by entering into competition with Lynch Consulting Services, Inc. Following trial, the district court ruled that directors Birl Lynch and R.C. Lynch had engaged in certain instances of self-dealing that were unfair to the corporation, and awarded Patterson $79,800 in damages. The court dismissed Patterson's claims against director Eunice Lynch and Lynch Management Services, a partnership made up of defendants Birl Lynch and R.C. Lynch. The court also dismissed the counterclaim against Patterson. We will direct correction of computation errors and affirm the judgment in all respects.

* Became Chief Justice January 1, 1985.

** Chief Justice at time of oral argument.

## FACTS

In October, 1979, Pat Patterson purchased a 30 percent interest in an oil-field consulting business operated by Birl Lynch and his son, R.C. Lynch. The three individuals conducted business as a partnership until April, 1980, when they incorporated under the name of Lynch Consulting Services, Inc. (LCS). Thirty percent of the corporate voting stock was issued to Patterson and 35 percent each to Birl Lynch and R.C. Lynch. The three shareholders served as the directors and officers of the corporation.

In February, 1981, Patterson informed the other directors of his desire to either buy their shares or sell his own. No agreement was reached concerning this proposal, and on February 28, 1981, Patterson resigned from his positions as vice president and director of the corporation. During the following month, Patterson formed his own consulting company and subsequently worked for Sunmark Exploration on a job which he had generated while serving as a director and officer of LCS. Eventually, Patterson acquired the business of several former LCS clients.

At a special meeting of the LCS board of directors on February 28, 1981, Birl Lynch and R.C. Lynch accepted Patterson's resignation and appointed R.C. Lynch vice president of the corporation. Eunice Lynch, the wife of Birl Lynch, was elected secretary of the board.[1] According to the minutes of that meeting, the directors, in recognition of the increased responsibilities to Birl Lynch and R.C. Lynch, doubled the compensation of Birl Lynch and R.C. Lynch for a total monthly income to each of $8,000.

From March 1, 1981, through December, 1981, Birl Lynch and R.C. Lynch received the salaries approved by the board at the February 28th meeting and, in addition, drew $7,416.58 each in bonuses. At a special meeting held January 1, 1982, the di-

1. The minutes do not reflect that Eunice Lynch was ever elected a director, but the pleadings reflect the acceptance of Eunice Lynch's status as a director, and Birl Lynch testified that she had been "named * * * as one of the directors."

rectors voted unanimously to discontinue payment of these salaries and to hire Lynch Management Services (LMS), a newly formed partnership composed of Birl Lynch and R.C. Lynch, to manage the corporation. The directors further agreed, by unanimous vote, to convene regularly and to pay Birl Lynch and R.C. Lynch monthly directors' fees of $1,300 each.

Pursuant to the agreement between the two companies, LCS, in January, 1982, began paying LMS $17,000 per month in management fees. LMS disbursed $16,000 of this money in monthly salaries to Birl Lynch and R.C. Lynch and retained $1,000 for expenses. While receiving these fees, LMS sought business as an oil-field consultant in its own right and was continuing to do so at the date of trial. The corporate shareholders received no benefit from the business acquired for the management company.

During the first complete fiscal year under the management of LMS (May 1, 1982, through April 30, 1983), the corporation operated at a net loss of $302,744, compared to $91,928 in net earnings from operations during the previous fiscal year. On April 30, 1983, the corporation's liabilities exceeded its assets by $105,494. One year earlier the corporation's net assets had amounted to $362,274.

Lynch Management Services, on the other hand, posted net earnings of $154,950 during its first year of existence (January 1, 1982, through December 31, 1982). Its net assets increased from the partners' original contribution of $969 to $11,572. Furthermore, in the year prior to trial, LMS acquired three consulting jobs for itself, but none for LCS.

At the February and March, 1982, board meetings, the directors of LCS agreed to purchase two city lots for the construction of an office building. The corporation paid $85,000 for the property and sold it four months later, by unanimous vote of the directors, to Birl Lynch and R.C. Lynch for $75,000.

Based on these facts adduced at trial, the district judge concluded that Birl Lynch

and R.C. Lynch, as directors of LCS, were fiduciaries to Patterson, a minority shareholder. The court ruled that Birl Lynch and R.C. Lynch had engaged in self-serving transactions with the corporation and had failed to establish the fairness of their dealings. The court found the following corporate expenditures to be improper:

| | |
|---|---|
| Directors' Fees | $ 26,000 |
| Increased officers' salaries of $4,000 per month for each of two defendants from March 1, 1981, through December 31, 1981 | $ 80,000 |
| Management fees actually paid to LMS, less proper expenditures for administration and salaries of $9,000 per month for 16 months | $150,000 |
| Benefit to Birl Lynch and R.C. Lynch from sale of real property | $ 10,000 |
| TOTAL | $266,000 |

The trial judge ruled that Birl Lynch and R.C. Lynch were directly liable to Patterson for his pro-rata share of these losses sustained by the corporation. Accordingly, the court entered judgment against Birl Lynch and R.C. Lynch for $79,800, the amount due to Patterson as a result of his 30 percent interest in the corporation. Patterson's claim against Eunice Lynch and the defendants' counterclaim were dismissed.

## ISSUES

Birl Lynch and R.C. Lynch present the following questions for our consideration:

"A. Whether the court erred in awarding judgment in favor of Pat Patterson as an individual rather than to the corporation.

"B. Whether the court erred in awarding recovery of directors fees paid during the months of January through October, 1982.

"C. Whether the court erred in awarding judgment for an increase in salaries of four thousand dollars ($4,000.00) per month to each of Birl and Bob Lynch for the period from March 1, 1982 [sic], until January 1, 1982.

"D. Whether the court erred in awarding damages to Patterson for manage-

ment fees paid by the corporation to Lynch Management Services.

"E. Whether the court erred in awarding damages to Patterson for earnest money paid by the corporation for the purchase of real property.

"F. Whether the court erred in dismissing the counterclaim against Pat Patterson."

Patterson raises a single issue:

"Whether the District Court erred in releasing the Defendant Eunice Lynch from responsibility under the judgment awarded to Pat Patterson, Plaintiff."

## DIRECT RECOVERY BY SHAREHOLDER

■ The parties as well as the trial court treated this litigation as a stockholders' derivative suit brought on behalf of the corporation. As a general rule, recovery in such actions inures to the corporation rather than to the stockholders as individuals. Note, *Shareholders' Right to Direct Recovery in Derivative Suits*, 17 Wyo.L.J. (1963). We referred to this principle in *Centrella v. Morris*, Wyo., 597 P.2d 958, 962 (1979), quoting from *Smith v. Stone*, 21 Wyo. 62, 95, 128 P. 612, 621 (1912):

"' * * * The stockholder, either individually or as the representative of the class, may commence the [derivative] suit, and may prosecute it to judgment; but in every other respect the action is the ordinary one brought by the corporation, it is maintained directly for the benefit of the corporation, and the final relief, when obtained, belongs to the corporation, and not to the stockholder-plaintiff.' " Quoting from the early work of Pomeroy's Equity Jurisprudence (3d Ed.), § 1095.

Nevertheless, courts sometimes permit pro-rata recovery by individual shareholders to prevent an award from reverting to the wrongdoers who remain in control of the corporation. *Backus v. Finkelstein*, 23 F.2d 357 (D.Minn.1927); *Dill v. Johnston*, 72 Okl. 149, 179 P. 608 (1919); *Crichton v. Webb Press Co., Ltd.*, 113 La. 167, 36 So. 926 (1904); *Eaton v. Robinson*, 19 R.I. 146, 31 A. 1058 (1895). See also *Perlman v. Feldman*, 219 F.2d 173 (2nd Cir.1955). The federal district court in *Backus v. Finkelstein* reasoned that individual recovery was necessary to avoid further litigation:

"* * * For obvious reasons, it may be highly improper to direct that the moneys here recovered on behalf of the corporation shall be paid into the treasury thereof. That might be paying the moneys back into the custody and control of those from whom the recovery is had. It might defeat effectually the purpose of the suit and be the beginning of another prolonged cycle of litigation. Unless conditions shall ensue which will materially change the situation, the distribution, so far as possible, should be directly to the individuals who will ultimately be entitled thereto." 23 F.2d at 366.

We find the reasoning in this opinion sound and applicable to the case at bar. Corporate recovery would simply return the funds to the control of the wrongdoers. The three defendant directors in the case at bar constitute the policy-making body of the corporation. *Smith v. Stone*, supra. They manage the business and affairs of the corporation under statutory authority.[2] Furthermore, two of the directors hold 70 percent of the voting stock in the corporation. Given the family orientation and small number of shareholders of LCS, any change in control of the corporation is unlikely.

■ Direct recovery assures that Patterson will reap some benefit from his lawsuit. We refuse to order payment into the corpo-

---

2. Section 17–1–133, W.S.1977, 1984 Cum.Supp., provides in part:

"The business and affairs of a corporation shall be managed under the direction of a board of directors."

Section 17–1–139, W.S.1977, 1984 Cum.Supp., specifically authorizes the directors to declare dividends:

"(a) The board of directors of a corporation may, from time to time, declare and the corporation may pay dividends on its outstanding shares in cash, property, or its own shares, except [under specified conditions] * * *."

rate treasury in this case and risk necessitating a subsequent suit by Patterson to compel the directors to declare a dividend or apply the funds to legitimate corporate purposes.

## DUTY OF LOYALTY TO THE CORPORATION

■ The trial court found that Birl Lynch and R.C. Lynch breached their fiduciary duties to LCS and its shareholders, in that they profited from a series of transactions to the detriment of the corporation. On appeal, the Lynches contend that their actions were permissible under the Wyoming Business Corporation Act, §§ 17–1–101 through 17–1–1011, W.S.1977, 1984 Cum.Supp. They urge this court to hold that a complaining stockholder must establish fraud or unreasonableness in order to recover damages from a director who enters into contracts with the corporation or approves his own compensation. Our prior cases, however, as well as those from other jurisdictions, require a challenged, interested director to prove that he acted in good faith and that the contested transactions were fair to the corporation. The Wyoming Business Corporation Act does not dictate a contrary result.

### Contracts with Interested Directors

In *Nicholson v. Kingery*, 37 Wyo. 299, 261 P. 122 (1927), we reviewed a transaction in which a corporation sold its controlling interest in a bank to an individual who served as director of both institutions. The corporation took back notes from the transferred bank in consideration. We held that the interested director bore the burden of showing by clear and convincing evidence that the transaction was open, fair and honest:

" * * * [I]f upon a careful scrutiny of the record it appears to a court of equity that the director has been open, fair and honest in his dealings with the corporation, and has secured no advantage by his contract to the detriment of the corporation it will be upheld. * * *

"Since in this case the defendant directors offered no testimony to overcome the presumption of fraud imposed upon them by law from the fact that they were acting both for themselves and the [corporation], we need go no farther than to hold that when it is shown by competent evidence that a director of a corporation acted both for himself and for the corporation in purchasing the property of a corporation, that the burden of proof is cast upon him to show by clear, convincing evidence that the transaction was open, fair and honestly made and that he did not profit by such sale to the disadvantage of the corporation." 261 P. at 124.

We reaffirmed this rule of law in *Voss Oil Company v. Voss*, Wyo., 367 P.2d 977, 979 (1962), where we held that interlocking directors who profited from a transaction to the disadvantage of the corporation were liable to the corporation in damages. The Supreme Court of the United States described this fiduciary obligation of corporate directors and majority stockholders in *Pepper v. Litton*, 308 U.S. 295, 306–307, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939):

" * * * Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. *Geddes v. Anaconda Copper Mining Company*, 254 U.S. 590, 599, 41 S.Ct. 209, 212, 65 L.Ed. 425. The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside."

We do not believe that the legislature in enacting § 17–1–136.1(a), W.S.1977, 1984 Cum.Supp., intended to relieve the defendant of the burden of proving fairness in cases such as the one before us. That section provides:

"(a) No contract or other transaction between a corporation and one (1) or more of its directors or any other corporation, firm, association or entity in which one (1) or more of its directors are directors or officers or are financially interested, shall be either void or voidable because of the relationship or interest or because the director or directors are present at the meeting of the board of directors or a committee thereof which authorizes, approves or ratifies the contract or transaction or because his or their votes are counted for the purpose, if:

"(i) The fact of the relationship or interest is disclosed or known to the board of directors or committee which authorizes, approves or ratifies the contract or transaction by a vote or consent sufficient for the purpose without counting the votes or consents of the interested directors; or

"(ii) The fact of the relationship or interest is disclosed or known to the shareholders entitled to vote and they authorize, approve or ratify the contract or transaction by vote or written consent; or

"(iii) The contract or transaction is fair and reasonable to the corporation."

The defendant directors do not argue that the transactions at issue here are protected by § 17–1–136.1(a)(i) or (ii). Rather, their position seems to be that a showing of the defendant's interest in a corporate contract is insufficient to invalidate it and, therefore, the plaintiff must at least establish the unreasonableness of a challenged transaction.

We decline to read § 17–1–136.-1(a)(iii) as broadly as the defendants urge. The fiduciary obligation of a director is a fundamental component of the corporate structure. It is embodied in § 17–1–133(b), W.S.1977, 1984 Cum.Supp., which imposes upon directors the affirmative duties of good faith, loyalty and care:

"(b) A director shall perform his duties as a director including his duties as a member of any committee of the board upon which he may serve, in good faith, in a manner he reasonably believes to be in the best interests of the corporation, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. * * * "

The very nature of these fiduciary standards of conduct demands that a challenged director bear the burden of establishing that a contract under which he benefits also serves the best interests of the corporation. *Pepper v. Litton,* supra; *Nicholson v. Kingery,* supra. See also *Fliegler v. Lawrence,* Del., 361 A.2d 218 (1976). We hold, therefore, that under § 17–1–136.-1(a)(iii) an interested director, unable to rely on subparts (i) or (ii), bears the burden of proving by clear and convincing evidence that a challenged transaction was fair and reasonable to the corporation.

In *Thomasi v. Koch,* Wyo., 660 P.2d 806, 811 (1983), we reviewed our appellate duties when considering factual matters determined by the district court under the clear-and-convincing standard. We said:

" * * * [I]t is the district court, not this court, which must be satisfied that there was clear and convincing evidence sufficient to establish a [disputed fact]. *Ward v. Waterman,* 85 Cal. 488, 24 P. 930 (1890). * * * This court previously has adopted language to this effect:

" ' * * * When the evidence is such that the mind readily reaches a satisfactory conclusion as to the existence or nonexistence of a fact in dispute, then the evidence is, of necessity, clear and satisfactory.' *Continental Sheep Co. v. Woodhouse,* 71 Wyo. 194, 202, 256 P.2d 97 (1953), quoting language found in *Good Milking Mach. Co. v. Galloway,* 168 Iowa 550, 150 N.W. 710, 712 (1915).

"We further had said that clear and convincing evidence is 'that kind of proof which would persuade a trier of fact that the truth of the contention is highly probable.' *MacGuire v. Harriscope Broadcasting Co.,* Wyo., 612 P.2d 830, 839 (1980)." 660 P.2d at 811–812.

The uncontradicted evidence at trial established that Birl Lynch and R.C. Lynch

stood on both sides of the agreement to hire LMS to manage the corporation. While drawing $17,000 per month in management fees, LMS took for itself consulting jobs which otherwise would have gone to the corporation. LCS operated at a loss under this arrangement while the management company showed a profit. The only justification presented at trial for this agreement was that it provided advantages for cash flow and tax planning. The trial judge concluded that Birl Lynch and R.C. Lynch had failed to establish the fairness to the corporation of those management fees in excess of $9,000 per month. The evidence supports this factual finding of the trial court and we will not disturb it on appeal. *Thomasi v. Koch,* supra.

■ The trial court also found that Birl Lynch and R.C. Lynch had not carried their burden of proof with respect to the conveyance of two city lots to themselves at a loss to the corporation of $10,000. The trial court was not required to accept the defendants' explanation that Patterson's refusal to guarantee a property-improvement loan necessitated the distress sale. We will sustain the trial court's conclusion, supported by the evidence, that the Lynches failed to prove the fairness of the conveyance by clear and convincing evidence. *Thomasi v. Koch,* supra.

*Executive Compensation and Directors' Fees*

■ The Wyoming Business Corporation Act permits the board of directors to set directors' fees [3] and to elect or appoint officers to manage the corporate business.[4] Although courts hesitate to inquire into the reasonableness of executive compensation fixed by a disinterested board, a stricter standard prevails when the recipient has set his own compensation. *Wilderman v. Wilderman,* Del.Ch., 315 A.2d 610, 615 (1974). In such cases, the burden falls on the director to prove the reasonableness of the challenged compensation. *Wilderman v. Wilderman,* supra; *Goldman v. Jame-*

son, 290 Ala. 160, 275 So.2d 108, 114 (1973); *Fendelman v. Fenco Handbag Manufacturing Co.,* Mo., 482 S.W.2d 461, 463, 53 A.L.R.3d 347 (1972). This requirement, as in the previously discussed cases involving contracts with interested directors, stems from the fiduciary position which directors hold towards their corporation and its stockholders. *Wilderman v. Wilderman,* supra.

Courts have established factors to consider in determining whether a defendant has met his burden with respect to the reasonableness of his fee or salary. These criteria include the recipient's ability, services and time devoted to the company, the size and complexities of the business, success achieved, corporate earnings and profits, increase in volume or quality of business, the prevailing general economic conditions, a comparison of salaries with distributions to stockholders, compensation for comparable positions in comparable concerns, and the amount previously received as a salary. *Wilderman v. Wilderman,* supra; *Goldman v. Jameson,* supra; *Fendelman v. Fenco Handbag Manufacturing Co.,* supra.

■ In the instant case, the minutes of the board meeting held February 28, 1981, and testimony presented at trial establish that the directors believed that Birl Lynch and R.C. Lynch were entitled to double their salaries as a result of increased responsibilities due to Patterson's resignation. The defendants did not specify what these additional responsibilities entailed; they presented no evidence of increased earnings which justified the extra compensation; neither did they attempt to establish how their salaries compared with those of executives in similar businesses. They offered no explanation for increasing the salaries of two officers, while refusing to declare a dividend so that nonexecutive stockholders could share in the company profits. The evidence supports the trial court's conclusion that the defendants

---

**3.** Section 17–1–133(a), W.S.1977, 1984 Cum. Supp.

**4.** Section 17–1–142, W.S.1977.

failed to establish the reasonableness of executive salaries in excess of $4,000 per month each. We will not disturb on appeal this factual finding supported by the evidence. *Pine Creek Canal No. 1 v. Stadler,* Wyo., 685 P.2d 13, 19 (1984).

██ The Lynches contend that Patterson should not be allowed to recover for excessive executive salaries because he did not claim for such damages in his complaint. However, Paragraph 5 of the complaint alleges that the defendants had conspired to divert assets from the corporation:

"5. Each of the above-named defendants became members and agents of an illegal and fraudulent conspiracy, the purpose of which was to divert to themselves or to persons with whom they were or are associated, the assets of Lynch Consultants, Inc., and wrongfully, legally and fraudulently to the use of the assets of Lynch Consultants, Inc. for their own selfish personal interest, advantage and profit, and for the personal interest, advantage and profit of persons and associates with whom they were or are interested to the financial loss and contrary to the interest of the plaintiff as a stockholder of said corporation. In furtherance of this conspiracy and to serve their own wrongful purposes, Defendants took certain steps as alleged herein and pursuant of the conspiracy."

Although the complaint does not specify excessive salaries, the allegations in Paragraph 5 were sufficient to give notice to the defendants that the plaintiff contested the removal of assets from the corporation, whether in the form of salary increases or otherwise.

██ A complaint which gives fair notice to the opposing party of the claims

against him satisfies the specificity standard of notice pleading under our rules of civil procedure.[5] *Guggenmos v. Tom Searl-Frank McCue, Inc.,* Wyo., 481 P.2d 48, 51–52 (1971). Allegations of particular acts or omissions of the defendant are unnecessary where the duty owed by the defendants appears to exist and to have been breached. *Harris v. Grizzle,* Wyo., 599 P.2d 580, 583 (1979). This rule holds especially where the facts lie more properly in the knowledge of the adverse party and details of the breach are available through discovery. *Harris v. Grizzle,* supra.

In the instant case, the fact that the defendants had voted themselves salary increases as well as the reasonableness of such compensation lay more properly within the knowledge of the directors of LCS. Patterson complained that the directors had breached their fiduciary obligations by diverting funds from the corporation to its detriment. This allegation sufficed to inform the defendants that an issue existed as to the reasonableness of the executive salaries and we will not overturn the award for excessive compensation on the ground of a defective complaint.

██ With respect to the reasonableness of the directors' fees paid to Birl Lynch and R.C. Lynch beginning in January, 1982, the minutes of the board meeting reflect that the fees were intended to compensate the Lynches for holding monthly meetings. The defendants offered no explanation as to why such fees were reasonable in the face of a depressed economy and rapidly declining revenues, or why Eunice Lynch, the third director, received no fees for attending directors' meetings. The evidence supports the trial court's conclusion that the defendants failed to establish the reasonableness of paying Birl Lynch and R.C.

---

5. Rule 8, W.R.C.P., provides in part:

"(a) *Claims for relief.*—A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, (2) a demand for judgment for the relief to which he deems himself entitled. * * *

\* \* \* \* \* \*

"(e) *Pleading to be concise and direct* * * *.
"(1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.

\* \* \* \* \* \*

"(f) *Construction of pleadings.*—All pleadings shall be so construed as to do substantial justice."

Lynch $1,300 per month each in directors' fees. We will, therefore, sustain the court's finding on appeal. *Pine Creek Canal No. 1 v. Stadler,* supra.

## COMPETITION WITH CORPORATION BY FORMER DIRECTOR

■ Birl Lynch and R.C. Lynch contend that Patterson, by forming an oil-field consulting business in competition with LCS, breached his fiduciary duties as a former director of the corporation. Absent an agreement to the contrary, however, a director or officer who terminates his position with the corporation has a right to open his own business and to compete for former clients. *Master Records, Inc. v. Backman,* 133 Ariz. 494, 652 P.2d 1017 (1982); *Parsons Mobile Products, Inc. v. Remmert,* 216 Kan. 256, 531 P.2d 428 (1975). The Supreme Court of Arkansas, in *Raines v. Toney,* 228 Ark. 1170, 313 S.W.2d 802, 809 (1958), considered the business activities available to a former director and officer:

" * * * It is, however, a common occurrence for corporate fiduciaries to resign and form a competing enterprise. Unless restricted by contract, this may be done with complete immunity because freedom of employment and encouragement of competition generally dictate that such persons can leave their corporation at any time and go into a competing business. They cannot while still corporate fiduciaries set up a competitive enterprise. *Witmer v. Arkansas Dailies, Inc.,* 202 Ark. 470, 151 S.W.2d 971, or resign and take with them the key personnel . of their corporations for the purposes of operating their own competitive enterprise. *Duane Jones Company, Inc. v. Burke,* 306 N.Y. 172, 117 N.E.2d 237. But they can, while still employed, notify their corporation's customers of their intention to resign and subsequently go into business for themselves, and accept business from them when offered to them. *Aetna Building Maintenance Co. v. West,* 39 Cal.2d 198, 246 P.2d 11. But they can use in their own enterprise the experience and knowledge they gained while working for their corporation. *Witmer v. Arkansas Dailies, Inc.,* supra. They can solicit the customers of their former corporation for business unless the customer list is itself confidential. *Continental Car-Na-Var Corporation v. Moseley,* 24 Cal.2d 104, 148 P.2d 9."

Clearly, Patterson breached no duty to LCS shareholders by accepting consulting jobs offered by the corporation's clients after he had established his business. Birl Lynch and R.C. Lynch contend, however, that Patterson took for his own benefit the Sunmark Exploration job which had been generated for LCS with corporate funds while Patterson served as a director and officer of the corporation.

■ The trial court made no express findings of fact in dismissing this counterclaim against Patterson. However, we have said in the past that a general finding and judgment for the successful party carries with it every finding of fact which can reasonably and fairly be drawn from the evidence. *Burk v. Burzynski,* Wyo., 672 P.2d 419, 425 (1983). Since the evidence is in conflict on this point, we will abide by our appellate duty to accept the evidence of the successful party as true and to leave out of consideration entirely the conflicting evidence of the unsuccessful party. *Martin v. Wing,* Wyo., 667 P.2d 1159, 1163 (1983). We will sustain the findings of the trial court unless they are clearly erroneous or contrary to the great weight of the evidence. *Salt River Enterprises, Inc. v. Heiner,* Wyo., 663 P.2d 518, 522 (1983).

■ Patterson testified that Sunmark Exploration had a special job in the coastal forest which called for his expertise. He said that Sunmark Exploration officials knew him, knew his work, and wanted him on the job particularly. He further testified that without him the corporation would not have received this work. Patterson breached no duty of loyalty by resigning from LCS and subsequently performing this· work directed to him personally rather

than to the corporation. *Raines v. Toney, supra.* The trial court's dismissal of the claim against Patterson finds support in the law and the facts, and we will not overturn it on appeal. *Burk v. Burzynski, supra.*

## PART II

ROONEY, Justice.

Patterson appeals from that portion of the judgment which dismisses his action against Eunice Lynch.

As previously noted, this action is a stockholder's derivative action and such is normally brought on behalf of the corporation, with resulting damages being paid to the corporation. The duty of the directors, the violation of which forms the ground for the action, is a duty to the corporation and not a duty to the stockholder instituting the action.

"The business and affairs of a corporation shall be managed under the direction of a board of directors. * * *" Section 17–1–133(a), W.S.1977, Cum.Supp.1984. Section 17–1–141(a)(i), W.S.1977, sets forth the liability of the directors to be "jointly and severally * * * *to the corporation*" (emphasis added) in the designated cases.

After recognizing such to be the general rule, we applied an exception thereto in the section hereof captioned "DIRECT RECOVERY BY SHAREHOLDER." We there said:

"Nevertheless, courts sometimes permit pro-rata recovery by individual shareholders to prevent an award from reverting to the wrongdoers who remain in control of the corporation. * * *"

We concluded:

" * * * We refuse to order payment into the corporate treasury in this case and risk necessitating a subsequent suit by Patterson to compel the directors to declare a dividend or apply the funds to legitimate corporate purposes."

If equity allows direct payment to Patterson so as to prevent the award "from reverting *to the wrongdoers*" (emphasis added) and to avoid the "risk [of] necessitating a subsequent suit * * * to compel the directors to declare a dividend or apply *the funds* to legitimate corporate purposes" (emphasis added), then equity should cause the funds to be repaid by those who received them.

The judgment was computed by allowing $80,000 for increased officers' salaries for each of *two* defendants (not that of Eunice Lynch), allowing $150,000 management fees paid to LMS—in which Eunice Lynch had no interest, allowing $10,000 benefit to Birl Lynch and R.C. Lynch (not to Eunice Lynch) for sale of real property, and allowing $26,000 for directors' fees paid to Birl Lynch and R.C. Lynch (not to Eunice Lynch).

The funds in question, normally to be returned to the corporation, were properly returnable by Birl Lynch and R.C. Lynch. Once returned, they would not inure to the benefit of Eunice Lynch as a stockholder. If used for "a dividend" or to increase corporate assets, Eunice Lynch would receive no benefit. She is not a stockholder. If she were to repay part of these funds, they would inure to the benefit of Birl Lynch and R.C. Lynch as well as to Patterson. They are the three stockholders. Birl Lynch and R.C. Lynch are the wrongdoers to whom part of the benefit would inure from Eunice Lynch's contribution.

This is not a case where the improper decision of the board of directors resulted in a loss to the corporation without such loss going to the directors. The failure by the directors to use the care which an ordinary prudent person in a like position would use under similar circumstances often causes a loss to the corporation without personal gain to the directors. They then should have to repay the loss to the corporation, jointly and severally. When the loss results in a gain to one or more, but not all, of the directors, those receiving the gain should ultimately bear the responsibility of repaying the corporate loss. More than one law suit may be necessary to accomplish this goal.

In this case, if that received by Birl Lynch and R.C. Lynch were specific personal or real property to be returned to the corporation, such return would be accomplished without involving Eunice Lynch.

■■■ The court properly allocated the responsibility for payment of the amount due Patterson resulting from improper fiduciary activities on the part of the directors of the corporation; Patterson's action against Eunice Lynch was properly dismissed.

The case is remanded for the purpose of amending, by interlineation or otherwise, the following improper calculations in the Judgment and Decree:

1. Page 2, subparagraph c, "One hundred fifty-eight thousand dollars ($158,-000.00)" should be "one hundred fifty thousand dollars ($150,000.00)."

2. Page 2, last line, "Two hundred twenty-six thousand dollars ($226,-000.00)" should be "two hundred sixty-six thousand dollars ($266,000.00)."

The judgment is affirmed in all other respects.

ROSE, Justice, dissenting, with whom THOMAS, Chief Justice, joins.

I cannot join in Part II of the majority opinion which excuses Eunice Lynch from liability in this case. As a voting member of the board of directors, she approved a series of transactions which destroyed the corporation while enhancing the value of a competing partnership composed of her husband and son. Conduct this egregious violates the duty of care imposed upon all directors by the Wyoming Business Corporation Act (§§ 17–1–101 through 17–1–1011, W.S.1977), regardless of whether she personally benefited from her actions. The fact that she voted to funnel corporate funds to directors other than herself cannot, as the majority hold, release her from liability where the duty and breach are clearly established.

## DUTY OF CARE

Section 17–1–133(b), W.S.1977, 1984 Cum. Supp., requires that a director of a corporation perform his or her duties:

"* * * with such care as an ordinarily prudent person in a like position would use under similar circumstances. In performing his duties, a director may rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by:

"(i) One (1) or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent in the matters presented;

"(ii) Counsel, public accountants or other persons as to matters which the director reasonably believes to be within the person's professional or expert competence; or

"(iii) A committee of the board upon which he does not serve, duly designated in accordance with a provision of the articles of incorporation or the bylaws, as to matters within its designated authority, which committee the director reasonably believes to merit confidence, but he shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause such reliance to be unwarranted. A person who so performs his duties has no liability by reason of being or having been a director of the corporation." (Emphasis added.)

We held directors to this same standard of care prior to the adoption of the Wyoming Business Corporation Act, *Smith v. Stone*, 21 Wyo. 62, 128 P. 612 (1912), and it represents the majority position. *Briggs v. Spaulding*, 141 U.S. 132, 11 S.Ct. 924, 35 L.Ed. 662 (1891); *Selheimer v. Manganese Corporation of America*, 423 Pa. 563, 224 A.2d 634 (1966). See The American Law Institute, Principles of Corporate Governance: Analysis and Recommendations, Tentative Draft No. 4 (April 12, 1985), § 4.01. Under this standard, courts will not interfere in questions of corporate management or policy, unless the complainant establishes fraud or its equivalent. *Smith v. Stone*, 128 P. at 619–620. In other words, directors are personally responsible to stockholders for losses result-

ing from fraud, illegality or unfair self-dealing, but they will not be held liable for honest mistakes of judgment which are fairly related to some rational business purpose. *Selheimer v. Manganese Corporation of America,* supra, 224 A.2d at 641, citing *Spering's Appeal,* 71 Pa. 11, 10 Am. Rep. 684 (1872).

Courts will step in, however, where the directors have wasted the corporate assets and no rational business purpose justifies such conduct. *New York Credit Men's Adjustment Bureau, Inc. v. Weiss,* 305 N.Y. 1, 110 N.E.2d 397 (1953). In *Selheimer v. Manganese Corporation of America,* supra, the directors of Manganese poured corporate funds into a plant known to be unsuitable for production and failed to use an available plant where profitable production was possible. The actions of the directors led to the corporation's insolvency, and the Pennsylvania Supreme Court held them personally liable in a stockholders' derivative action:

> "Defendants' actions in respect to the Colwyn plant were not the result of errors in judgment or a calculated business risk nor can such actions be classified as mere negligence. With the knowledge which defendants had of the unsuitability of the Paterson plant for profitable production, the pouring of Manganese's funds into this plant defies explanation; in fact, the defendants have failed to give any satisfactory explanation or advance any justification for such expenditures.

> \*   \*   \*   \*   \*   \*

> "This record indicates clearly that these defendants, as the controlling directors and officers, wasted and dissipated Manganese's assets. Their actions constituted negligence such as was inimical to the corporation and the other stockholders of this corporation. Whether their conduct as directors and officers be measured by the yardstick provided in Section 408 of the Business Corporation Law \* \* \*, or by common law,[1] their conduct offended

their fiduciary relationship to this corporation in such manner as to justify the imposition upon them of personal liability for such conduct." 224 A.2d at 646.

In the instant case, Eunice Lynch, as one of the three directors of LCS, approved the payment of management fees to a competing partnership composed of her husband and son. The board of directors continued payment of these fees on a monthly basis while the partnership performed consulting jobs and the income of the corporation declined. The directors voted unanimously to deplete the corporate assets through officers' salaries, directors' fees, and the sale of corporate property at a loss. While any one of these last actions might not be sufficient to hold a director liable, the complete pattern of conduct evidences a program of corporate destruction and violates the duty of care imposed on corporate directors by § 17–1–133(b). Such behavior cannot be attributed to errors in judgment or calculated business risks.

The Superior Court of New Jersey faced a similar situation in *Francis v. United Jersey Bank,* 162 N.J.Super. 355, 392 A.2d 1233 (1978), affirmed 171 N.J.Super. 34, 407 A.2d 1253 (1979), cert. granted 82 N.J. 285, 412 A.2d 791 (1980), affirmed 87 N.J. 15, 432 A.2d 814 (1981). There, the wife of the principal stockholder and leader of Pritchard & Baird sat as a director of that corporation while it unlawfully paid substantial sums of money to members of her family. The court held Mrs. Pritchard liable for the negligent performance of her duties as a director of the corporation:

> "It has been urged in this case that Mrs. Pritchard should not be held responsible for what happened while she was a director of Pritchard & Baird because she was a simple housewife who served as a director as an accommodation to her husband and sons. Let me start by saying that I reject the sexism which is unintended but which is implicit in such an argument. There is no reason why the average housewife could not adequately

---

1. Section 17–1–133(b) of the Wyoming Business Corporation Act reflects the common-law duty of care imposed upon corporate directors.

discharge the functions of a director of a corporation such as Pritchard & Baird, despite a lack of business career experience, if she gave some reasonable attention to what she was supposed to be doing. The problem is not that Mrs. Pritchard was a simple housewife. The problem is that she was a person who took a job which necessarily entailed certain responsibilities and she then failed to make any effort whatever to discharge those responsibilities. The ultimate insult to the fundamental dignity and equality of women would be to treat a grown woman as though she were a child not responsible for her acts and omissions." 392 A.2d at 1241.

A recent decision by the Supreme Court of Delaware also bears on our deliberations here. In *Smith v. Van Gorkom,* Del., 488 A.2d 858 (1985), the Delaware court held that corporate directors had breached their fiduciary duty of care by failing to inform themselves of reasonably available and relevant data prior to entering into a merger agreement. The directors, in agreeing to accept a premium of $17 per share over the market price, had lacked valuation information, had failed to obtain details of the transaction from its proponent, and had reached their decision after only two hours' deliberation. 488 A.2d at 874. Nothing in the record indicated that the directors had benefited personally from their conduct. In assessing liability, the court ruled that directors who attempt to exercise their business judgment without obtaining adequate information violate their duty of care to the corporation.

Section 17–1–133(b)(i), permits a director to rely on information supplied by other officers or employees of the corporation. Eunice Lynch offered no evidence that she voted as she did in reliance on this type of information. In any event, I doubt that such reliance would have been reasonable under the facts of this case. To afford protection to a director, reports by corporate officials must "be entitled to good faith, not blind, reliance." *Smith v. Van Gorkom,* 488 A.2d at 875.

I would have held that Eunice Lynch, as a voting member of the board of directors, breached the duty of care owed to the corporation and is, therefore, jointly and severally liable with the other directors for damages proved at trial. Direct recovery by Patterson is consistent with a finding of liability on the part of Eunice Lynch, since she participated as a director in the dissipation of his 30 percent share in the corporation. Pro-rata recovery simply prevents the complaining stockholder's award from reverting to the control of the three directors who misused the corporate funds in the first place.